FRUGÉ, Judge.
This is an action on an insurance contract for reimbursement of losses sustained by plaintiff-insured from the defendant-insurer as the result of a fire which totally destroyed plaintiff’s home and its contents. Plaintiff also requested penalties and attorney fees for defendant’s arbitrary and capricious refusal to pay the claim within the sixty-day period provided by La. R.S. 22:658. The trial court awarded judgment in favor of plaintiff in the sum of $42,-690.00 for loss of property and additional living expenses, $5,122.80 in penalties, and $12,000.00 in attorney fees. Defendant has appealed to this court and plaintiff answered the appeal requesting an increase in penalties and living expenses or in the alternative the reservation of the right to assert the claim for additional living expenses in another action and to increase the attorney fees to $17,500.00.
The record shows that defendant and plaintiff entered into a contract of insurance on November 27, 1967 covering plaintiff’s home and its contents. On January 12, 1968, the house and its contents were totally destroyed by fire. Immediately after the fire, at defendant’s request plaintiff filled out a list itemizing the losses that she had incurred. Plaintiff was told that the claim would be paid in a few weeks. However, no action was taken by defendant until March 7, 1968, when defendant mailed a formal proof of loss to plaintiff requesting that she fill it out, sign it, and return it. Plaintiff’s attorney said the request would be complied with if it were clear that a new sixty-day period would not be initiated. No agreement could be reached and plaintiff instituted this suit.
Defendant contends that the circumstances surrounding the fire were such as to justify defendant’s not paying the claim at all and certainly not within the sixty-day period provided by La. R.S. 22:658. When the plaintiff initially reported the loss, she was asked to submit a list of the contents of the house and was assured that payment would be made within a few weeks. There was no mention of the possibility of arson or other suspicious circumstances which would prevent payment of the claim. However, Lt. Francis Frugé of the State Police, who witnessed the fire, called defendant’s office about two weeks after the fire and informed Mr. Wallace Montet that arson was definitely involved in the burning of the house and that there were several suspects in the case. Two of these suspects claimed that they burned the house at the request of Jo Jo Fontenot, a close friend of Miss Headrick’s, to whom she is now married.
The trial judge placed no reliance on the testimony of the two individuals, who had numerous contradictions in their testimony. There was reason to believe *321 that at least one of these individuals had a grudge against Jo Jo Fontenot, and the obvious manner in which they said they burned the house and received the payoff indicated an attempt to frame Fontenot. The trial court felt that their testimony was unreliable and a complete fabrication. In any event, Miss Headrick was in no way implicated which is necessary to defeat her claim.
Defendant also tried to show that plaintiff’s financial situation gave her a motive for burning her house. Although it was shown that Miss Headrick had missed some work while ill and owed some medical bills they were not of such a substantial nature as to indicate that Miss Headrick burned her house. The plaintiff had substantial income in her employment with Grolier, Inc., and her earning capacity was steadily increasing. Accordingly, the defendant failed to show Miss Headrick had a motive for burning the house or that she had any connection with the arson.
Defendant further contends that by the terms of the contract the insurer was not required to make any payment until a sworn proof of loss was signed and returned to the insurer. There is a clause in the insurance contract which calls for such a signed proof of loss. However, the insurer supplied Miss Headrick with claim forms and asked her to give an inventory without mentioning the formal proof of loss statement. Also when Miss Headrick filled out the papers supplied her and returned them to the office of the insurer no mention was made at that time of the requirement of a formal proof of loss.
It would seem that the behavior of defendant and its employees under these circumstances would amount to a waiver of the requirement of a sworn proof of loss in the event that it was required by the terms of the policy as the trial court said in its reasons for judgment. (Tr. 284)
“Under these circumstances and the other evidence the Court finds that the insurer was not justified in failing and refusing to pay the claim or any part of it admittedly due on the ground that the insurer did not receive the additional form mailed to the insured in March.
“And this is so regardless of whether Miss Headrick actually mailed the form sent to her much later or not. This was at most a technical formality at that point. Under other circumstances the question whether Miss Headrick mailed the form sent later might very well be significant, but it is not significant under these facts.”
The trial court properly held that the defendant-insurer’s reliance on a “technicality” after considerable delay could not serve to defeat plaintiff’s claim.
In Sensat v. State Farm Fire and Casualty Company, 176 So.2d 804, 807 (La.App.3d Cir., 1965), the court stated:
“Defendant’s contention that no proof of loss was submitted is adequately answered by Mayes v. State Farm Mutual Automobile Insurance Co., La.App.2nd Cir., 141 So.2d 890. There it was held that since the purpose of requiring the submission of a proof of loss is to guarantee that the insurer is apprised of the insured’s claim, where the insurer was in fact fully apprised of the claim and made an offer of settlement the submission of a proof of loss by the insured would have served no usual [sic] purpose and was therefore unnecessary. Here, as in the Mayes case, submission of a proof of loss would have been a useless act.”
Likewise in the instant case to have submitted a sworn proof of loss at the time it was requested would have been a vain and useless act, although no offer of settlement was made.
Defendant contends that the entire policy is void because the plaintiff misrepresented the values of the contents of the house and was guilty of fraud and false swearing with intent to deceive. Miss Headrick, who is a sales representative *322 for Grolier, Inc., and other book companies, traveled extensively and made many appearances before educators and other professionals in order to sell her products. This required high standards of dress on her part and for this reason, Miss Head-rick had a large amount of clothing and accessories. Her house was also well furnished with a wide range of items. In giving her deposition and filling out a list of items lost in the fire it is not surprising that she omitted some items, overpriced some and underpriced others. This was done almost totally by memory since all of her records, sales slips, receipts, etc., were destroyed by the fire. It would be extremely difficult to give the exact purchase price of all of the items in such a situation.
Under the circumstances the plaintiff did all that could be reasonably required of her, and it was to be expected that there would be discrepancies between the price she quoted and the actual prices in some instances. However, these discrepancies are not substantial enough to indicate Miss Headrick intended to defraud or deceive the insurer.
Defendant contends that the trial court’s award' of $12,000,00 for unscheduled personal property is excessive and should be substantially reduced. In examining the various items claimed by the plaintiff, we found several that were improperly claimed. The built-in Westinghouse oven, the three wall mirrors, and the carpet are immovables and as such are included in the $30,000.00 coverage of the house. Many items of children’s and men’s clothing belonged to third parties and cannot be validly claimed by the plaintiff.
After considering all the claims and the objections to them, we find that the $12,-000.00 award for unscheduled personal property is excessive and should be reduced to $9,000.00.
Defendant also contends that no penalties or attorney fees should be allowed in this case. It is apparent from the testimony of defendant’s agents that they did not believe that Miss Headrick was involved in any arson or any attempt to burn her house. Nevertheless, the information supplied by Lt. Francis Frugé indicated that arson was involved and the defendant was entitled to a reasonable time to investigate whether or not Miss Headrick was involved in the arson.
Defendant’s investigation failed to show that Miss Headrick was involved, but this does not automatically invoke penalties and attorney fees. In Bennett v. Niagara Fire Insurance Company, 126 So.2d 718 (La.App.3d Cir., 1961), the defendant-insurer resisted payment on the grounds of arson. Although the insurer was held liable for the face amount of the policy, no penalty or attorney fees were assessed. The insurer was in good faith in using the defense of arson because of the suspicious circumstances surrounding the fire. In that case arson was obviously involved, but the insurer failed to prove that the insured had any connection with it. See also Domino v. New York Fire Insurance Company, 153 So.2d 550 (La.App. 1st Cir., 1963).
In the instant case the defendant-insurer did not clearly indicate to the insured that it was resisting payment on the grounds that the insured had burned the house. Nevertheless, the circumstances surrounding the burning of the house were such as to enable the insurer to resist the claim without being arbitrary and capricious. Therefore, the award of penalties and attorney fees must be disallowed.[1]
As stated in the trial court’s reasons for judgment, the defendant can offset the judgment against it to the extent that it paid St. Landry Homestead Association for the note, provided the note and mort *323 gage are cancelled in full and are no longer an encumbrance on the property.
For these reasons, the trial court judgment is amended to reduce the amount of $42,690.00 (by the amount of $3,000.00) to the sum of $39,690.00; penalties and attorney’s fees allowed there are hereby denied and deleted; and the defendant can offset the judgment against it to the extent that it paid St. Landry Homestead Association for the note, provided the note and mortgage are cancelled in full and are no longer an encumbrance on the property mortgaged, and in all other respects the judgment of the trial court appealed from is affirmed at defendant-appellant’s cost.
Amended and affirmed as amended.
ORDER
On Applications for Rehearing.
En Banc.
Rehearing denied.

. The author of this opinion agrees with the decision of the trial court in every respect, but yields to the majority’s denial of penalties and attorney fees and reduction of the award for unscheduled personal property to $9,000.00.