251 So.2d 787 (1971)
Leo SWINDLE
v.
MARYLAND CASUALTY COMPANY.
No. 8382.
Court of Appeal of Louisiana, First Circuit.
June 30, 1971.
Rehearing Denied September 2, 1971.
Writ Refused October 18, 1971.
*788 Robert L. Kleinpeter, Baton Rouge, for appellant.
H. Alva Brumfield, Baton Rouge, for appellee.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
LOTTINGER, Judge.
This is a suit on a fire insurance policy issued by defendant, Maryland Casualty Company, to petitioner, Leo Swindle, in the sum of $10,000.00.
The allegations of petitioner's petition show that on or about April 1, 1965, Maryland Casualty Company issued a fire insurance policy labeled a Home Owner's Policy to protect against loss by fire, a dwelling owned by petitioner some two miles from Pine Grove in the Parish of St. Helena, Louisiana. On or about June 7, 1965, the premises insured by defendant was completely destroyed by a fire of unknown origin. Demand was made upon Maryland Casualty Company which was refused.
In its petition, petitioner alleges that the failure of the defendant to pay the sum claimed is arbitrary, capricious and without probable cause and, therefore, seeks an additional 12% as penalties and $2,500.00 attorney fees. The Lower Court rendered judgment in favor of petitioner as prayed for, and the defendant has taken this appeal.
After the filing of this suit in State Court, defendant filed a petition for removal to the Federal Court claiming diversity of citizenship. Following trial of the matter in the Federal District Court, the matter was transferred to the State Court because of lack of jurisdictional amount.
In answer to the petition, defendant contends that the fire was not from an "unknown origin" but was caused by the petitioner and, in the alternative, that petitioner did not have any more invested in the house than the sum of $5,000.00, which was his total loss as a result of the fire. In its brief reasons for judgment, the Lower Court cited Creel v. Audubon Insurance Company, La.App., 128 So.2d 284, stating that there must be a two-pronged inquiry in cases of this nature which establish (1) that the fire was of an incendiary origin; and (2) that the plaintiff was responsible for it. The Court then agreed that there was a possibility that the fire was of incendiary origin and that there was a possibility that the plaintiff set it but held that defendant failed to establish that the plaintiff set the fire in question and, accordingly, rendered a judgment in favor of petitioner and against defendant.
The evidence disclosed that shortly prior to the fire in question, petitioner entered into a verbal agreement with George Jones, whereby Jones was to build a house for petitioner and his wife. The agreed price for the construction of the house was the sum of $11,000.00.
At the time of the fire on June 7, 1965, petitioner had advanced the sum of $5,000.00 toward payment of the price. Petitioner never paid Jones any additional sums nor was the house ever completed. At the time of the fire, the house was about 90% completed. As a result of the failure of petitioner to pay anything additional, Jones filed a lien in the sum of $10,019.71, subject to a credit of $5,000.00, and subsequently filed suit for the amount due.
Prior to and on the day of the fire, petitioner and his wife were living in a van located behind the house which was under construction. They both testified that the house was practically finished at the time of the fire, however, the house had been locked up by the contractor when he left almost two weeks previously. All the windows had been installed, no utility service had been connected, including gas or electricity, however, electricity was attached to the trailer in the rear of the house which was located some 12 to 15 feet from the house. There was no gas connection to the trailer.
*789 On the night before the fire, petitioner and his wife spent the night in the van behind the house. They claim that they got up at about 5:30 o'clock in the morning, cooked breakfast on a wood stove in the van and prepared to leave. They testified that they left the premises at approximately 7:35 a. m. At the time, the house was completely fenced in with a gate and lock. There was no one at the place when petitioner and his wife left in their red pickup truck.
Upon leaving the house, they drove toward Pine Grove with plans to drive to Baton Rouge to their lawyer's office. On the way, they stopped at their son's trailer some 17 or 18 miles from the house under construction. They arrived at their son's trailer about 9:00 a. m. They later went to their lawyer's office where they arrived at approximately 9:45 a. m., and remained there until about 11:00 a. m. On the return trip, they stopped by the Baton Rouge Hospital to visit a friend and returned to their son's trailer at about 12:30 or 1:00 p. m. Upon their arrival, no one was at the trailer but their son came in later and advised them that the house had burned.
Both petitioner and his wife testified that they had on occasion seen an electrical extension cord which had been used by the carpenters to operate power tools in the house. However, the testimony of Mr. Jones reflects that when he left, because Mr. Swindle would not pay him, he removed all his power tools as well as the extension cord from the premises. His leaving was some two weeks prior to the fire.
The record further reflects that on two previous occasions, the petitioner had collected insurance on houses which he had owned and had burned, one in Arkansas and one in the area of Watson, Louisiana.
According to the testimony of petitioners neither Mr. or Mrs. Swindle had any keys to the premises, however there was a hole in the wall of the utility room which had been placed there at the request of Mrs. Swindle to vent a dryer. As of the date of the fire, there had been no workers on the premises for at least a week or ten days, and on the date of the fire, the weather was good, there was no lightning or thunder and it was a cool morning.
Mr. Sam Lathers, a disinterested witness, testified that on the morning of the fire, he was proceeding with his wife and child to his father-in-law's home which was situated just a short distance, some quarter of a mile, from the residence that burned. He was accompanied by his brother-in-law, Phillip Ellsworth and Samuel Dorsey. As he was proceeding along the road and nearing the driveway which runs to petitioner's home, he saw a snake in the road and attempted to run over it. Just about that time, a truck came out from the driveway in front of him which he said was moving "kinda fast". Although he testified that the truck was either red or green, he was pretty sure it was red. His statement to the Fire Marshall, which was given just some two weeks after the fire, was to the effect that it was a red truck. He stated that there was a white man and woman in the truck.
Mr. Lathers proceeded to his father-in-law's residence where he deposited his wife and child and some 15 or 20 minutes later, left his father-in-law's residence with his other passengers.
Upon leaving his father-in-law's residence, he first noticed smoke and then flames coming from what appeared to be the carport and utility room of the petitioner's home. He testified that he had seen this red truck on several occasions since and that some time following the fire, both Swindle and his wife came to his residence in what appeared to be the same red truck to talk about the fire and to get a statement from him.
The deposition of Phillip Ellsworth was substantially the same as that of Sam Lathers. He testified as to the red truck which passed them at the time of the snake incident and also that they did not stay at Sam Lather's father-in-law's house any *790 more than 10 to 20 minutes and saw the fire upon leaving.
The testimony of Deputy Fire Marshall Harelson, who had been Fire Marshall for several years and had investigated many fire losses was to the effect that there was no possible way for this house to have caught fire and burn except by someone setting a match to the house.
The testimony as a whole is to the effect that on the morning of the fire, there was a cool and clear day, there was no thunder or lightning or other adverse weather conditions, and that there were no utilities connected, such as gas or electricity to the house which burned. There was nothing in the house except some interior doors and plywood which had been left there by the contractor. The contractor had not been present for a period of approximately two weeks since petitioner and his wife had locked the gate and dismissed them from the premises. The evidence reflects that there was a hole in the wall of the utility room which was put there for the installation of a dryer, and there appears to be no question but that the fire started in the area of the utility room. Both petitioner and his wife testified that when they left the house on the morning of the fire, they were in a red pickup truck.
In Sumrall v. Providence Washington Insurance Company, 221 La. 633, 60 So.2d 68, the Court said:
"Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof that the fire was incendiary in origin and that the plaintiff was responsible for it. It is well settled that the insurer need not prove its case against the plaintiff beyond a reasonable doubt; it suffices that the evidence preponderated in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire."
* * * * * *
"In support of its contention, defendant proved that plaintiff was in financial straits; that he owed many debts and that a number of them were due for labor and materials furnished in the construction work of the house. In this connection, it was shown that various building and material supply houses had filed liens against the property in sums totaling in excess of $2000 and had reduced their claims to judgment."
In that case, the Lower Court held that the setting of the fire was deliberate, however, the Court found that the petitioner was not the perpetrator of the deed and, accordingly, rendered judgment in favor of petitioner. In reversing the decision of the Lower Court, the Supreme Court said:
"Considering that plaintiff was in dire financial circumstances and that he alone, according to the evidence, would benefit by the fire, there can be no doubt that defendant has established that he had a motive for destroying the property. And motive, plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer. See Picoraro v. Insurance Co., 175 La. 416, 143 So. 360 and other authorities cited above. However, the inference resulting from this circumstantial proof must be weighed in connection with plaintiff's denials of wrongdoing.
The district judge was of the opinion that the evidence did not preponderately establish the existence of a motive in plaintiff to destroy his property by fire or that he burned or caused it to be burned. He further opined that, after a consideration of all of the proof `* * it is not unreasonable to presume that some other person might have been responsible for the fires'.

*791 We cannot agree with the judge that the evidence does not establish the existence of a motive in plaintiff to set fire to his property, forasmuch as shown above, he stood to gain if he could have collected the insurance."
The great weight of the evidence discloses that the fire in the present suit was of an incendiary nature. The evidence further shows that prior to the filing of suit, a lien was filed against the premises in question and suit followed against the petitioner for the sum of $10,019.17, less a credit of $5,000.00. The petitioner was having difficulties in having the premises completed, and the contractor and his workmen had walked off the job some ten days to two weeks prior to the fire. This, we feel would show a motive in petitioner for the setting of a fire to the premises.
Furthermore, the record discloses that on two prior occasions, premises of petitioner had burned for which petitioner had collected insurance, and the actions of petitioner and his wife on the morning of the fire, as testified to by witnesses for the defense, certainly indicate to us that the affirmative defense pleaded by the defendant has been sustained. We further feel that the petitioner has failed to rebut the presumption established to the effect that he was responsible for the fire.
Accordingly, for the reasons hereinabove assigned, the judgment of the Lower Court will be reversed, and there will be judgment herein in favor of defendant and against petitioner, dismissing petitioner's demand at petitioner's cost.
Judgment reversed.

ON REHEARING
PER CURIAM.
Plaintiff-appellee has urged the granting of a rehearing and has submitted that we erred in three specifics. We have carefully considered the application for rehearing and the points raised therein and are of the opinion that the rehearing should be denied but that one point raised by plaintiff-appellee should be answered. It is contended that the statement by us in the original opinion, to-wit: "We further feel that the petitioner has failed to rebut the presumption established to the effect that he was responsible for the fire", infers that we have incorrectly created a presumption against an insured contrary to law. It was not our intention to do so. While the use of the word "presumption" might tend to support plaintiff-appellee's argument, we believe that a perusal of the entire paragraph supports the conclusion that the evidence adduced by defendant was sufficient to maintain its affirmative defense of arson. Once the evidence was sufficient to do so then it was incumbent upon appellee to rebut such evidence. Accordingly, we state here that the evidence adduced by plaintiff-appellee was insufficient to rebut a preponderance of evidence brought forth by the defendant in support of its affirmative defense.
Rehearing denied.