Joseph A. FARACE and Vita Farace, Plaintiffs-Appellees Cross-Appellants,

v.

INDEPENDENT FIRE INSURANCE COMPANY, Defendant-Appellant Cross-Appellee.

No. 82–3236.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1983.

---

4. We emphasize the word eligible. There is no evidence that the petitioner was promised *release* at any time in the future.

Stafford, Stewart & Potter, Grove Stafford, Jr., Alexandria, La., for defendant-appellant cross-appellee.

Eugene P. Cicardo, James S. Gravel, Alexandria, La., for plaintiffs-appellees cross-appellants.

Before RANDALL and HIGGINBOTHAM, Circuit Judges, and McDONALD *, District Judge.

RANDALL, Circuit Judge:

The defendant, Independent Fire Insurance Company, has appealed from a jury verdict rendered in favor of the plaintiffs, Joseph and Vita Farace, which awarded the plaintiffs fire insurance proceeds less a partial credit for payments made to the mortgagees. On appeal, the defendant claims (1) that the judge's instructions to the jury were an inaccurate statement of Louisiana law with regard to the insurer's defense of arson; (2) that the judge erred in excluding testimony concerning the plaintiffs' failure to cooperate with the fire marshal; and (3) that the defendants were entitled to a credit against the judgment including interest and attorneys' fees, as well as the amount paid on the mortgage itself. The plaintiffs have cross-appealed the trial judge's failure to award them attorneys' fees and penalties. For the reasons set forth below, we affirm.

* District Judge of the Southern District of Texas, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On Monday evening, September 8, 1980, the plaintiffs left their home in Alexandria, Louisiana and drove to Toledo Bend to spend the night and to go fishing the next day. Before leaving, they made sure that the doors and windows in the house were securely shut and they took their children to the homes of friends to stay the night. No one except the Faraces had a key to the house.

The Faraces testified at trial that they arrived at Toledo Bend and obtained a room at a motel called "White's Landing." While there was no record at the motel of their renting a room, the Faraces produced a gasoline receipt with a charge corresponding to the cost of a room at the motel. The Faraces claimed to have spent the night at the motel, gone fishing the next day, and returned to Alexandria around 5:30 p.m. on September 9, 1980, at which time they learned about the fire.

The city firefighters were called to the fire and arrived at the burning Farace home around 10:30 p.m. on September 8. The house was locked, and the firefighters had to break the lock on the door to get inside the home to fight the fire. All the windows were down except for one which was open about four inches.

Inside the house, the firefighters found three plastic milk jugs that had contained gasoline. Two of the jugs had partially burned and melted. Gasoline had apparently spilled onto the floor and rugs and there were newspapers on the floor. One of the firefighters also noted that the natural gas line inside the house going to the furnace was broken, and two of the light fixtures had come out of the ceiling and were lying on the floor.

The defendant produced evidence that the plaintiffs had debts totaling over $175,000, including $17,000 in tax liens recorded against them and other judgments taken against them amounting to over $3700. There were three mortgages on the property; two of the mortgage holders were named as loss payees on the Faraces' insurance policy. Mr. Farace had apparently been trying to sell the house, but had not been successful. He explained that the house had become too big for the family because the children had grown, and one was away at college. Mr. Farace's father had also been living with the family, but had passed away before the fire. Mr. Farace raised the fire insurance coverage on the home from $109,000 to $125,000 shortly before the fire on the recommendation of an insurance agent.

The City of Alexandria and the state fire marshal's office both investigated the fire, apparently suspecting arson. Mr. Farace was subsequently indicted for arson and convicted by a jury, but his conviction was set aside for insufficiency of the evidence.

After the fire, Mr. Farace filled out a proof of loss statement and filed a claim under his insurance policy. The defendant refused payment, claiming that the plaintiffs were responsible for the fire. The plaintiffs then brought this diversity action to collect the fire insurance proceeds. After the plaintiffs filed suit, the defendant paid off the mortgages on the property.

At trial, the parties stipulated to the incendiary origin of the fire as well as the amount of the loss to the plaintiffs. The defendant introduced evidence of the plaintiffs' financial difficulties in order to establish the plaintiffs' motive for burning down their own house. The plaintiffs produced their fishing expedition alibi in rebuttal. The jury rendered a verdict in the plaintiffs' favor and the trial judge entered a judgment in accordance with the parties' stipulation, less a credit for payments made by the insurance company on the mortgage principal. The plaintiffs' claim for penalties and attorneys' fees was denied, as was the defendant's motion for a new trial. Both parties filed timely appeals.

## II. THE JURY INSTRUCTION.

The defendant first claims as error the trial judge's refusal to give the defendant's requested jury instruction concerning the burden of proof in a case where the

insurer relies on the affirmative defense of arson against a suit to collect fire insurance proceeds.

The trial judge instructed the jury that the insurer bore the burden of proving the defense of arson by a preponderance of the evidence, and that it must establish (1) that the fire was of an incendiary origin and (2) that the plaintiffs were responsible for the fire.[1] The defendant contends that the judge incorrectly informed the jury that the defendant had to prove the plaintiffs' responsibility for the fire. It maintains that once it had established the incendiary origin of the fire and the plaintiffs' motive for setting it—in this case the plaintiffs were allegedly in dire financial straits—that the burden shifted to the plaintiffs to establish that they were not responsible for burning down their house.[2]

In reviewing a trial judge's instruction to a jury, we must look at the charge as a whole and we will not reverse unless the instruction as given had a tendency to confuse or to mislead the jury. *See Delancey v. Motichek Towing Service, Inc.*, 427

F.2d 897, 901 (5th Cir.1970); *see also* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2558 (1978). Because this is a diversity case, we must determine whether the substance of the charge was a full and proper explanation of state law. *See Kroger Co. v. Roadrunner Transportation, Inc.*, 634 F.2d 228 (5th Cir.1981). We hold that the trial judge's instruction to the jury in this case was an adequate statement of Louisiana arson law.

The Louisiana Supreme Court set forth the standard of proof of arson in *Sumrall v. Providence Washington Insurance Co.*, 221 La. 633, 60 So.2d 68, 69 (1952) (emphasis added):

> Inasmuch as the defense is arson, *the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it.* It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense.

1. The complete instructions were:

    In the case at bar, the fire insurance policy was issued to the plaintiffs. In this case, the plaintiffs were the owners of the residence insured, and defendant claims that they intentionally set the fire which occurred in the residence. If you find from the evidence that defendant has borne the burden of proving that the plaintiffs were responsible for the fire, then you must return a verdict for the defendant; rejecting the claim of plaintiffs under the fire insurance policy.

    The burden of proof rests upon the insurer here, that is, the insurance company, to establish that the fire was of incendiary origin, that has been stipulated, and that plaintiffs were responsible for that fire. That is the issue for you to decide, the second thing that I mentioned.

    In order to establish the defense of arson, the defendant has the burden of proving by a preponderance of the evidence, and I have just defined that for you a few minutes ago, that the fire was of incendiary origin and that the plaintiffs were responsible for it.

    It is common knowledge that there are many ways to set a fire, directly or through others. The setting, or causing to be set, of an incendiary fire is always attended by utmost secrecy. There are usually not witnesses and the illegal act is seldom exposed to the light of day. Therefore, in cases such as this,

the fire insurance company ordinarily relies upon circumstantial evidence to show that the fire is of incendiary origin and that the plaintiffs are responsible for that fire. That is also true in this case. Where circumstantial evidence is relied upon, the evidence must be so convincing that it will sustain that, that there is no other reasonable way but that the plaintiffs were responsible for the fire.

In this respect, motive is an important cause and motive is something that causes a person to act, that is, the inducement, cause, or the reason why a thing is done.

Financial condition of the plaintiffs is one of the factors which you may consider in determining whether or not they committed arson.

2. The defendant requested the following instruction:

    If the insurance company proves that the house was burned by arson, and that plaintiff had a motive for burning it, then plaintiff has the burden of producing believable evidence to show he did not burn it or procure it to be burned. If the plaintiff does not produce believable evidence, to prove that he did not burn the house, or procure it to be burned, then you must decide the case in favor of the defendant.

Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.

*See also Rist v. Commercial Union Insurance Co.,* 376 So.2d 113 (La.1979). The defendant emphasizes that the court then went on to state that "[m]otive plus the incendiary origin of the fire would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer . . . ." 60 So.2d at 70 (citations omitted). More recently, the Louisiana Court of Appeals, reversing a trial court's judgment in favor of the plaintiff, stated: "[A] perusal of the entire paragraph supports the conclusion that the evidence adduced by defendant was sufficient to maintain its affirmative defense of arson. Once the evidence was sufficient to do so then it was incumbent upon appellee to rebut such evidence." *Swindle v. Maryland Casualty Co.,* 251 So.2d 787, 791 (La.App.) *writ denied,* 259 La. 885, 253 So.2d 217 (1971).

Neither *Sumrall* nor *Swindle* support the defendant's claim that it was entitled to an instruction that the burden shifted to the plaintiffs once the defendant had established motive and incendiary origin.[3] At most, the cases suggest that a plaintiff "must provide evidence to rebut the otherwise sufficiently established affirmative defense of arson." *Viviano v. Travelers Insurance Co.,* 533 F.Supp. 1, 8 (E.D.La.1981). The plaintiffs in this case presented believable rebuttal evidence. They claimed that there was no evidence that they had failed to pay their debts as they became due and maintained that they had substantial assets to cover their debts. Further, they produced documentary evidence and witnesses to corroborate their alibi that they were out of town at the time of the fire.

In essence, the defendant's claim of error involves a confusion between the burden of production and the burden of persuasion. The language in *Sumrall* relied on by the defendant seems to apply to the burden of production. *Sumrall* holds that where the insurer establishes incendiary origin and motive, it has met its initial burden of production. It has presented enough evidence to take its arson defense to a jury, and in fact, if the plaintiff fails to reply, the insurer may be entitled to a directed verdict in its favor. *See* E. Cleary, *McCormick on Evidence* § 336 (2d Ed. 1972) [hereinafter "McCormick"]. Since the plaintiffs have presented believable rebuttal evidence, however, we need not be concerned with the question of burden of production. The adequacy of the jury instructions is a question concerning the burden of persuasion, not the burden of production. *See McCormick, supra,* § 336.[4] The defendant has

---

3. The record indicates that the defendant did produce evidence of its affirmative defense of arson. The parties stipulated to the incendiary origin of the fire in this case and the defendant presented extensive testimony concerning the Faraces' financial difficulties. It claimed that *the Faraces' debts amounted to more than* $175,000, including $17,000 in state and federal tax liens recorded against them and over $3700 in adverse judgments.

4. One commentator has described the shifting burden of production as a "bursting bubble." The party who bears the initial burden of production must produce enough evidence to create a disputed issue of fact in order to get his case to the jury. He may also produce enough evidence to create a presumption in his favor which might entitle him to a directed verdict unless the adverse party comes forward with rebuttal evidence. Once the adverse party presents sufficient rebuttal evidence, however, the initial presumption disappears. *See McCormick,* § 345, at 821 (1972) (discussing Thayer, *Preliminary Treatise on Evidence,* Ch. 8 (1898)). While the Louisiana courts have not stated their views about what happens to the shifting burdens of production, some commentators and a number of courts seem to favor the bursting bubble approach. *See Republic National Life Insurance Co. v. Heyward,* 536 S.W.2d 549 (Tex.1976); *Empire Gas and Fuel Co. v. Muegge,* 135 Tex. 520, 143 S.W.2d 763 (1940); *Davis v. Loftin,* 75 So.2d 813 (Fla. 1954); 9 J. Wigmore, *Evidence,* § 2491 (J. Chadbourn ed. 1981); *see also* cases collected at Annot., 5 A.L.R.3d 19 (1966). In fact, this court has reversed a trial court where it gave a presumption instruction after the adverse party had presented enough evidence to burst the presumptive bubble. *Clayton v. Burston,* 493 F.2d 429 (5th Cir.1974) (Texas law).

cited no authority for the proposition that the burden of persuasion in an arson defense ever shifts from the insurer to the insured. Further, we are not aware of any case where the Louisiana courts have reversed a jury verdict on the basis of a trial judge's failure to give a jury instruction like the instruction requested by the defendant.

In the absence of any Louisiana law to the contrary, we can only conclude that the district court's instruction to the jury which stated that the insurer bore the burden of proving the insured's responsibility for the fire was an accurate statement of the law as set forth in *Sumrall* and its progeny. We note further that the court instructed the jury on how the defendant might have met its burden of proof. It informed the jury that the parties had stipulated to the incendiary origin of the fire in this case and that proof of the plaintiffs' financial difficulties was "one of the factors which [they might] consider in determining whether or not [the plaintiffs] committed arson." Record, Vol. III, at 10. Accordingly, we hold that the trial court committed no error in its instruction to the jury.

## III. EXCLUSION OF THE EVIDENCE.

■ The defendant claims that the trial court committed reversible error by excluding testimony concerning Mr. Farace's failure to cooperate with the fire marshal's investigation. The defendant sought to introduce this testimony in order to impeach the plaintiff's credibility. The alleged failure to cooperate involved Mr. Farace's assertion of his fifth amendment right not to answer questions that might incriminate him. While recognizing that the plaintiff's fifth amendment rights were not directly implicated by the defendant's proffered testimony, the trial judge excluded that testimony in order to protect the rights and policies embodied in the fifth amendment.[5]

As was the case with the challenged jury instruction, our review of the trial judge's evidentiary ruling is limited. The decision whether to admit or exclude evidence is a decision committed to the sound discretion of the trial court, and we will reverse only where there has been a clear abuse of that discretion. *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104, 1107–08 (5th Cir.1981) (no reversible error where evidence was admitted over plaintiff's objection of unfair surprise); *Ballou v. Henri*

5. The trial court stated:

The court will sustain the objection for these reasons: I am not speaking, nor are all of my reasons strictly in connection with a *Miranda* warning or the fifth amendment since no *Miranda* warning was given here and no fifth amendment was claimed. But I am concerned about the theory of both. And this, I feel, is a matter that addresses itself more to the discretion of the court rather than a purely legal decision. And in this particular situation, and I would not state this as a matter of law, it is a departure from the authorities which have been cited to me in those cases, at least the main one, the person had made the statement; they didn't discuss whether he had the right not to make the statement. That is an entirely different thing. Where you make the statement, then is it admissible, that is what was there. And the question before us is not that at all. There is no statement here at all, to be admitted or not to be admitted, made by Mr. Farace. In the thing here, the court is being asked to allow a party to admit testimony in support of a theory of implication of guilt, sort of a legal implication. And in this par-

ticular case I feel that, although in this particular instance I think would be a better word, although we do not here have a criminal case before us today, the court can take judicial knowledge of the fact that actually a criminal case did ensue here, and part of the reason was this investigation. I think, therefore, that the conclusion urged as a basis for the refusal of Mr. Farace to make statements in the course of investigation, refused to comply with the request, could very well be the fear of a criminal result. And I find it difficult to say that he has a right to refuse to talk and then to say that when he refuses to talk there is some implication against him. That is not formally, as I said before, a pleading of the fifth amendment, but it certainly is a theory of the fifth amendment. And the court is satisfied that it has to observe that theory. And in addition, it so happened in this particular case he was advised by his attorney, and it might be his—it is not his place to question or to override his attorney in that advice given. So, for these reasons the court will exclude this testimony, it will not be given to the jury.
Record, Vol. VI, at 272–74.

*Studios, Inc.,* 656 F.2d 1147, 1155 (5th Cir. 1981) (exclusion of evidence of high alcohol content in deceased plaintiff's blood reversed because possibility of prejudice was slight and probative value very high); *Smith v. State Farm Fire and Casualty Co.,* 633 F.2d 401 (5th Cir.1980) (trial court did not abuse its discretion in excluding evidence that five other properties owned by plaintiff had been destroyed by fire where fires occurred a number of years earlier and evidence of one previous fire was admitted).

■ There were no constitutional grounds for the exclusion of the proffered testimony. The defendant correctly points out that while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him, *see Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973), his refusal to testify may be used against him in a civil proceeding. *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Although a jury is not supposed to draw any inference from a defendant's silence in a criminal trial, *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court chose in *Baxter* to follow "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them...." 425 U.S. at 318, 96 S.Ct. at 1557. Even the dissent in *Baxter* recognized that such an inference is permissible in civil litigation between private parties:

I would have difficulty holding such an inference impermissible in civil cases involving only private parties. But I would hold that compulsion violating the privilege is present in any proceeding, criminal or civil, where *a government official* puts questions to an individual with the knowledge that the answers might tend to incriminate him.

. . . .

In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege.

425 U.S. at 334–35, 96 S.Ct. at 1565–66 (Brennan and Marshall, JJ., concurring in part and dissenting in part) (emphasis in original).[6]

■ A trial court, however, has wide discretion under Fed.R.Evid. 403[7] to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice...." *See Ballou, supra.* In terms of the probative value of the proffered testimony, the plaintiff's failure to cooperate with the authorities was arguably relevant evidence, *see Wells v. Twin City Fire Insurance Co.,* 239 La. 662, 119 So.2d 501 (1960) (reversing a judgment for the defendant, the Louisiana Supreme Court noted that the plaintiff had fully cooperated with the arson investigation). The jurors' assessment of the plaintiff's credibility might well have been affected had they known that Mr. Farace had refused to speak to the arson investigators. One argument for admitting the assertion of the fifth amendment privilege is that it is an assertion by the party that he may have something to hide. *See* Heidt, *The Conjurer's Circle: The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J., 1062, 1117 (1982).

On the other hand, the inference flowing from the plaintiff's assertion of his fifth amendment privilege may not be as one-sided as it at first appears, and herein lies the danger of unfair prejudice.[8] The assertion

6. We note further that in light of the reversal of Mr. Farace's conviction on the ground of evidentiary insufficiency, there was no longer a possibility that his testimony or failure to testify could have criminal consequences.

7. The Federal Rules of Evidence govern in diversity cases. *Ballou,* 656 F.2d at 1153.

8. Of course, the asserted prejudice must be more than the fact that the evidence is adverse to the opposing party; it must be *unfair. Ramos v. Liberty Mutual Ins. Co.,* 615 F.2d 334, 340 (5th Cir.1980), *cert. denied, sub nom. Rucker v. Shell Oil Co.,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981).

of the privilege, particularly on the advice of counsel, is an ambiguous response. An attorney might advise her or his client not to answer questions simply as a safety measure lest the client disclose information that she or he may not even know to be criminal. Heidt, *supra*, at 1116. The jury may attach undue weight to the plaintiff's assertion of the privilege: "The revelation that [the invoker] has claimed the privilege marks him as a criminal who has probably eluded justice. The jury is not likely to realize that the innocent may invoke." Heidt, *supra*, at 1124.

Here, the plaintiff's failure to cooperate was limited to an initial refusal to answer the fire marshal's questions. The defendant concedes that the plaintiff cooperated fully with the defendant in its investigation. Under these circumstances, the initial invocation of the fifth amendment may have had little probative value, while the potential for the jury's misunderstanding of the plaintiff's decision to invoke his constitutional rights could well have resulted in unfair prejudice to Mr. Farace. These are the concerns that seem to have underlain the trial judge's decision not to allow the defendant to inform the jury of the plaintiffs' initial refusal to cooperate.

We need not decide today, however, whether the trial judge's decision constituted an abuse of discretion because we conclude that the exclusion did not constitute reversible error. We will reverse for an error in an evidentiary ruling only where the ruling has harmed the complaining party. *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980); *Tugwell v. A.F. Klaveness Co.*, 320 F.2d 866 (5th Cir.1963), *cert. denied*, 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970 (1964). Federal Rule of Civil Procedure 61 provides that we may reverse for trial error only where the error affects the substantial rights of the parties. *See also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2885 (1973).

The defendant sought to introduce the excluded testimony in order to impeach Mr. Farace's credibility. The defendant had ample opportunity to impeach its witness by other means. The defendant succeeded in presenting evidence that Joseph Farace had had prior experience with the criminal authorities: he had pleaded *nolo contendere* to criminal charges concerning stolen cases of beer. It also presented extensive evidence concerning the plaintiff's allegedly precarious financial position. Under these circumstances, we will not reverse the trial judge's decision to exclude further impeachment testimony of limited probative value.

## IV. CREDIT FOR INTEREST AND ATTORNEYS' FEES.

■ The trial judge allowed the defendant a credit against the judgment for payments made on the balances owed to the mortgagees, but denied the defendant interest and attorneys' fees paid on the mortgages. The defendant claims that it was entitled to a full credit for its payments to the loss payees including attorneys' fees and interest.

The Louisiana courts have allowed a credit for attorneys' fees and interest on the mortgage where the mortgage was assigned to the insurance company upon payment. *See Capitol Building & Loan Association v. Northern Insurance Co.*, 166 La. 179, 116 So. 843 (1928); *Fuselier v. United States Fidelity & Guaranty Co.*, 301 So.2d 681 (La.App. 1974); *Russell v. Niagara Fire Insurance Co.*, 129 So.2d 545 (La.App.1961). As the plaintiffs point out, however, the defendants in these cases prevailed on the merits. In cases where the plaintiff-insured prevailed, there is no indication that the insurer recovered anything more than the payments on the mortgage itself. In *Wallace v. State Farm Fire & Casualty Insurance Co.*, 345 So.2d 1004 (La.App.), *writ denied*, 349 So.2d 334 (La.1977), the credit was clearly limited to the mortgage payments. The balance owing on the two mortgages at the time of the fire was $3,712.07, 345 So.2d at 1007, and the credit permitted was $3,712.10. 345 So.2d at 1009. In *Headrick v. Pennsylvania Millers Mutual Insurance Co.*, 232 So.2d 319 (La.App.), *aff'd*, 257 La. 1101, 245 So.2d 324 (1977), the court simply stated that the defendant could "offset the

judgment against it to the extent that it paid ... for the note, provided the note and mortgage [were] cancelled in full ...." 232 So.2d at 323.

The difference in approach between the cases where the defendant wins and those where the plaintiff wins may be explained in terms of the status of the mortgage. If the defendant-insurer prevails on its arson defense, then it was under no obligation to the plaintiff to pay off the mortgage. Therefore, the insurer steps into the shoes of the mortgagee and continues to be entitled to interest on the mortgage until the mortgage is paid off; otherwise, the plaintiff would receive a windfall through his own wrongdoing by having his mortgage canceled as of the date that he destroyed his property. If the plaintiff prevails, however, then the insurer owed an obligation to the plaintiff under the insurance contract to pay off the plaintiff's loss, including the mortgage, within sixty days of the filing of a proof-of-loss statement. At that time, the plaintiff was entitled to have his mortgage *canceled,* and no further interest should accrue.

The trial judge's denial of interest and attorneys' fees in this case can also be understood in terms of the insurance company's own fault in becoming obligated for the extra payments. The insurance company delayed eight months before paying Homemakers' Finance Service, Inc., and fourteen months before paying First Federal Savings and Loan Association. It did not pay either mortgagee until after the Faraces had filed their suit to collect the insurance proceeds, and in First Federal's case, until after First Federal had moved to intervene in the Faraces' suit.

The defendant had no excuse for this delay in payment. The insurance policy provides that the insurer shall pay the amount for which it is liable within sixty days after proof of loss. *See also* La.Rev. Stat.Ann. § 22:658 (West 1978).[9] The mortgage clause in the contract provides further that the insurer's liability to the mortgagees named in the policy shall not be invalidated by any act of the mortgagor.[10] Under the terms of the contract, the insurer's arson defense against the Faraces did not relieve it of liability to the loss payees. It had no reason for failing to make a timely payment to the mortgagees, and therefore any interest and attorneys' fees due on the mortgage were the result of the insurer's own failure to meet its contractual obligations. Under these circumstances, we agree with the trial court that the insurer was not entitled to interest and attorneys' fees on the mortgages.

### V. PLAINTIFFS' CROSS–APPEAL.

■ The plaintiffs have cross-appealed the trial court's denial of their motion for attorneys' fees and penalties. They maintain that they were entitled to the fees and penalties under La.Rev.Stat.Ann. § 22:658 (West 1978), which provides for such an award where the insurer's refusal to pay was arbitrary, capricious and without probable cause. In light of the absence of doubt that arson was involved in this case and the existence of a criminal investigation of the plaintiffs with regard to the fire, the insurance company's refusal to pay the fire insurance proceeds was not arbitrary and capricious. *See Headrick v. Pennsylvania*

---

**9.** The policy provides:

The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company ex-pressed in writing or by the filing with this Company of an award as herein provided.
Parties' Joint Exhibit at 2, line 150.

**10.** The mortgage clause provides in relevant part:

Loss, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, under all present or future mortgages upon the property herein described in which the aforesaid may have an interest as mortgagee (or trustee), in order of precedence of said mortgages, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property ....
Parties' Joint Exhibit, additional form at 3.

*Millers Mutual Insurance Co.,* 257 La. 1101, 245 So.2d 324 (1977). Accordingly, the trial court's denial of attorneys' fees and penalties to the plaintiffs is affirmed.

The costs of this appeal shall be borne by the defendant.

AFFIRMED.