**STATE FARM LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Diane D. GUTTERMAN, et al., Defendants–Appellees,**

v.

**Regan Daughtry GUTTERMAN and John S. Gutterman, III, Infants, Defendants–Appellants,**

**and**

**H.J. Davidson, Jr., Co–Guardian Ad Litem of the Minor Children, Etc., Appellant.**

No. 88–4865.

United States Court of Appeals, Fifth Circuit.

March 12, 1990.

H.J. Davidson, Jr., Columbus, Miss., Co–Guardian Ad Litem for infants.

Henry D.H. Olinde, Jr., Timothy F. Burr, New Orleans, La., for Regan Daughtry Gutterman & John S. Gutterman, III.

Jacob C. Pongetti, Columbus, Miss., Trustee.

James A. Walters, Charles D. Easley, Walters & Easley, Columbus, Miss., for defendants-appellees.

Before GARZA, WILLIAMS and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

In this dispute over the proceeds of a life insurance policy, the appellant, a co-guardian ad litem for two minor children (the co-guardian), complains of the district court's order terminating his appointment and dismissing the claims of the minors he represents. We affirm.

I.

In May of 1987, plaintiff, State Farm Life Insurance Company (State Farm) instituted an interpleader action seeking a judicial determination of the party entitled to the proceeds of a life insurance policy insuring the life of the deceased, Dr. John S. Gutterman, II. State Farm named as defendants Diane Gutterman, Dr. Gutterman's surviving widow; Jacob C. Pongetti, Trustee-in-Bankruptcy for the Estate of Dr. Gutterman and Diane Gutterman (the trustee); Ruth Segars, the mother of Diane Gutterman; Joel Daughtry, the father of Diane Gutterman; the Estate of Dr. Gutterman of which Diane Gutterman qualified as administrator; and Regan Daughtry Gutterman and John S. Gutterman, III, the minor children of Dr. Gutterman and Diane Gutterman. The court appointed a guardian *ad litem* for the children. The court later appointed a co-guardian *ad litem* (the appellant in this appeal).

A brief recitation of the background facts is necessary to understand the dispute that arose over the policy proceeds. In February of 1984, Dr. Gutterman applied for a $700,000 life insurance policy with State Farm. The policy named him as the insured and designated his wife Diane

Gutterman as the primary beneficiary and owner of the policy. Ruth Segars was the successor beneficiary and Joel Daughtry was the final beneficiary.

In December 1985, Dr. Gutterman submitted a "Change of Beneficiary Form" to State Farm. The form named Dr. Gutterman as the insured and "Regan Gutterman—age 2—daughter" and "John S. Gutterman, III—age 1—son" as the primary beneficiaries. Diane Gutterman was the successor beneficiary.[1]

In September 1986, Dr. Gutterman and Diane Gutterman filed for Chapter 7 bankruptcy protection.

In January 1987, while in the bedroom of his home, Dr. Gutterman suffered a fatal gunshot wound to the head. Although the death was initially considered a suicide, the co-guardian alleges that the injury was not self-inflicted and that Diane Gutterman caused her husband's death. Law enforcement officials investigated the death, but no criminal charges have been filed.

On March 13, 1987, the trustee served notice on State Farm that the proceeds of the policy were the property of Diane Gutterman's bankruptcy estate and should be tendered to the trustee. On March 23, 1987, Diane Gutterman made a claim for the proceeds of the life insurance policy.

After interpleading the above-named parties, State Farm filed a motion for summary judgment seeking permission to withdraw from the interpleader action on grounds that it had paid its policy limit in the court's registry and had no further liability or interest in the litigation. The court granted State Farm's motion and dismissed it from the suit.

Diane Gutterman then filed a motion for summary judgment to obtain the insurance proceeds. The court granted the motion and ordered the proceeds paid to Diane's bankruptcy trustee. The court terminated the guardianship and dismissed the claims of the minor children.

The co-guardian filed a motion for reconsideration, arguing that Diane Gutterman

---

1. The policy number listed to be changed was erroneously the policy on the life of John S. Gutterman, III rather than the number for Dr. Gutterman's policy.

would not be entitled to the proceeds if she caused the death of Dr. Gutterman. The court held that, even if Diane Gutterman were disqualified as a beneficiary, the minor children were not entitled to the proceeds. That ruling is the subject of this appeal.

## II.

The co-guardian contends that disputed issues of material fact are presented with regard to whether Diane Gutterman killed her husband and, therefore, summary judgment was improper. Appellant argues that if the factfinder ultimately finds that Diane murdered her husband, Dr. Gutterman's children are entitled to the insurance proceeds for two reasons. First, he argues that the children, as Dr. Gutterman's heirs, should receive the proceeds in the event all named beneficiaries are disqualified. Second, he maintains that Dr. Gutterman signed a valid change of beneficiary form naming the children as beneficiaries.

We conclude that the co-guardian did not present sufficient evidence to create a material issue of fact as to whether Diane Gutterman killed her husband. Furthermore, we conclude, as a matter of law, that no valid change of beneficiary form was executed naming the children as beneficiaries.

## A.

■ The co-guardian argues that the district court erred in granting summary judgment in favor of Diane Gutterman because disputed issues of material fact exist as to whether Diane Gutterman killed her husband. We agree with the co-guardian that we must view all evidence in the light most favorable to the non-moving party. *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 192, *reh'g denied, cert. denied,* — U.S. —, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). But, after Diane filed her motion for summary judgment which was supported by her affidavit unequivocally denying any involvement in her husband's death, the burden shifted to the co-guardian to show that disputed issues of fact remained. As the nonmoving party, the co-guardian was required to go beyond the pleadings and, by "affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there [was] a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 ((1986), (*citing,* Fed.R. Civ.P. 56(e)).)

■ Both the Supreme Court and this circuit have addressed, at length, how much evidence the nonmoving party must present. The Supreme Court explained that the standard for granting summary judgment mirrors the standard for a directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Id.* at 247–48, 106 S.Ct. at 2509–10. Nor is the "mere existence of a scintilla of evidence" sufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. This circuit has described the amount of evidence the nonmoving party must bring forward as "significant probative evidence." *In re Municipal Bond Reporting Antitrust Litg.,* 672 F.2d 436, 440 (5th Cir. 1982), (quoting *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978)); *Fischbach & Moore, Inc. v. Cajun Elec. Power Co–Op.,* 799 F.2d 194, 197 (5th Cir.1986). This may be equated with the "substantial evidence" standard used to determine whether a directed verdict is appropriate. *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

■ Although the co-guardian, in his brief, alludes to several "disputed facts" that he argues indicate that Diane Gutterman participated in her husband's death, the co-guardian only offers support for one of his allegations. He relies on Diane Gutterman's testimony during her December 17, 1987 deposition. Diane Gutterman unequivocally stated both in her deposition and in her affidavit in support of her mo-

tion for summary judgment that she did not participate in her husband's death in any way and that the fatal gunshot wound was self-inflicted. However, in her deposition, her attorney instructed her not to answer questions regarding the circumstances of her husband's death because a criminal investigation was pending.[2] For example, Diane Gutterman refused to disclose what her husband said immediately before his shooting, what she did after the shooting, what she said to the police, the amount of alcohol the couple had to drink on the night of the shooting, the manner in which she saw Dr. Gutterman use the gun to shoot himself, and with whom she discussed the shooting.

The co-guardian's contention that an adverse inference may be drawn from a witness' assertion of her fifth amendment rights in civil cases is correct. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, at least one district court, in a case closely analogous to the case at hand, concluded that the adverse inference from the party's refusal to answer questions was not enough to create an issue of fact. *Avirgan v. Hull*, 691 F.Supp. 1357 (S.D.Fla.1988). Similarly, we conclude in this case that the adverse inference flowing from Diane Gutterman's refusal to answer the questions propounded to her in her deposition is insufficient to create an issue of material fact precluding summary judgment.

"The assertion of the [fifth amendment] privilege, particularly on the advice of counsel, is an ambiguous response." *Farace v. Independent Fire Ins. Co.*, 699 F.2d 204, 210–11 (5th Cir.1983).[3] This is particularly true here, where the co-guard-

ian has failed to present any other evidence to bolster the inference. We conclude that Diane Gutterman's refusal to testify to collateral matters regarding Dr. Gutterman's shooting is not "significant probative evidence" sufficient to create a genuine issue of material fact.

## B.

The co-guardian contends that effect should be given to Dr. Gutterman's attempt to change the policy beneficiaries. We agree with the district court that Dr. Gutterman was not the owner of the policy; therefore, he did not have the power to designate the beneficiaries. The insurance contract gave this right to the policy owner, Diane Gutterman.

The co-guardian argues that the "intent of the parties" was to give Dr. Gutterman the power to change the beneficiaries. He relies on the facts that Dr. Gutterman dealt with the insurance agent and that State Farm accepted the change in beneficiary form. Absent ambiguity, mistake or fraud, effect is to be given to contractual language. *Byrd v. Rees*, 171 So.2d 864, 867, 251 Miss. 876 (1965). Finding none of these flaws, we are bound by the terms of the contract. Thus, even if Dr. Gutterman subjectively intended to reserve the right to change the beneficiaries, the unambiguous terms of the insurance contract make it clear that he did not retain that right in the policy.

AFFIRMED.

---

**2.** Later, the grand jury failed to return a true bill of indictment and no charges are contemplated unless additional substantial evidence is found. This is supported by an affidavit of the District Attorney for the relevant district.

**3.** In *Farace*, the court held that it was not error for a district court to exclude as unfairly prejudicial evidence of a party's assertion of his fifth amendment right. Other courts have also been somewhat reluctant to embrace this inference. At least two courts have declined to draw the inference at all where the party relying on the inference provided no independent evidence to support it. *Dellacroce v. Commissioner*, 83 T.C.

269, 285–86 (1984); *In re Stelweck*, 86 B.R. 833 (1988), *aff'd*, 108 B.R. 488 (Bkrtcy.E.D.Penn. 1989). This circuit has also limited the value of the negative inference by recognizing that a party seeking summary judgment can not rely solely on the other party's exercise of her fifth amendment rights. "[A] grant of summary judgment merely because of the invocation of the fifth amendment would unduly penalize the employment of the privilege." *United States v. White*, 589 F.2d 1283, 1287 (5th Cir.1979). Cf. *Hoover v. Knight*, 678 F.2d 578, 581 (5th Cir. 1982).