*636
 
 McCALEB, Justice.
 

 This is an action to recover the face value ($7500) of a fire insurance policy, together with penalties and attorneys’ fees. The policy was issued by Providence-Washington Insurance Company, on April 16th 1949, covering the one story frame residence of plaintiff (which was then under construction) located in Glenn Oaks Drive Subdivision in the City of Baton Rouge. The house was totally destroyed by fire during the early morning hours of August 16th 1949.'
 

 The insurer resists the demand, affirmatively charging that plaintiff, either by himself or in conspiracy with his father or third persons, burned or was instrumental in setting the property afire for the purpose of collecting the insurance.
 

 Following a trial on this issue, the judge ruled for plaintiff, fixing the actual loss at $6798.58.
 
 [1]
 
 And, after deducting therefrom the sum- of $2485.06, being the amount due the mortgagee, Capital Bldg, and Loan Assn., judgment was entered for $4313.52, plus statutory penalties of 12% and attorneys’ fees of 20'% of the principal award. Defendant has appealed.
 

 Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. Adams v. Liverpool & London & Globe Insurance Co., 5 Orleans App. 301; St. Philip v. Lumbermens Ins. Co. of Philadelphia, 18 La.App. 331, 137 So. 359; Wilson v. Aetna Ins. Co., La.App., 161 So. 650; Parker v. Hartford Fire Ins. Co. of Hartford, Conn., La.App., 163 So. 435; Picoraro v. Insurance Co., 175 La. 416, 143 So. 360; Di Martino v. Continental Ins. Co. of New York, 187 La. 855, 175 So. 598 and Pizzolato v. Liverpool & London
 
 &
 
 Globe Ins. Co., 207 La. 101, 20 So.2d 551. Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy. Those of the case at bar are as follows:
 

 Plaintiff’s father, J. E. Sumrall, is a contractor doing business in Baton Rouge, Louisiana. During the Summer of 1949, he became engaged in subdividing, for residential purposes, a tract of land known as “Glenn Oaks Drive”, situated north of the city of Baton Rouge. In July 1949, there were five dwellings located on Glenn Oaks
 
 *638
 
 Drive, one owned by a Mr. Couch, another by a Mr. Choates, two by J. E. Sumrall and the other, the property in question, owned by plaintiff. All of these houses were single, one story, two or three bedroom structures of modern style and- were constructed by J. E. Sumrall, either as contractor or as owner. Plaintiff’s house was being built for his own use and he performed and superintended, in conjunction with his father, all of the construction work.
 

 At about 10:00 p. m. on Friday, August 12th 1949, plaintiff’s truck, loaded with refuse lumber and shavings allegedly taken from his house, caught afire while it was parked in the rear of the dwelling. The fire was discovered by Mr. Choates and Mr. Couch, who lived within the immediate vicinity, they arriving at the scene in time to extinguish ■ it before it spread to or burned any portion of the house. In arresting the fire, these neighbors discovered a five gallon can on the floor of the truck which contained turpentine.
 

 On the following Sunday morning at about 3:00 o’clock, J. E. Sumrall’s house, located on the other side of the street from plaintiff’s property, burned to the ground. This fire was investigated by an employee of the. State Fire Marshal’s office, a Mr. Harrelson. In the course of his inquiry, Mr. Harrelson was told by the neighbors of the fire on the truck and he thereupon made an examination of plaintiff’s property,
 
 [2]
 
 which disclosed that there was a considerable amount of shavings and other debris spread over the kitchen and combination dining room-living room, together with stains of varnish or other liquid and buckets or cans containing turpentine, paint or other inflammable substances. Mr. Harrelson testified that, in his opinion, the house was “set up” for a fire and that it was “loaded to go”. Upon his discovery, he immediately contacted the Sheriff’s office and a deputy sheriff repaired to the scene where photographs were taken of the interior of plaintiff’s house and also of the truck which had previously caught fire. The photographs, which were offered in evidence, were identified by Harrelson and other witnesses testifying for defendant. They portray a scene of accumulated lumber shavings and refuse piled over the floors, nearby cans or buckets containing, according to the testimony, turpentine, varnish or other liquids which also appear to have been spilled on the floors. On the following Tuesday morning, August 16th 1949, at about 1:45 a. m., the house burned to -the ground.
 

 The trial' judge concluded that the fire was of incendiary origin. However, counsel for plaintiff argue in this court that the proof does not justify the holding.
 

 For our part, we think that the facts speak for themselves. Three fires within
 
 *640
 
 five days burning to the ground the houses of father and son and damaging the truck of the son, can hardly be regarded as mere coincidences, especially in view of the direct evidence of disinterested witnesses that two rooms in the interior of plaintiff’s house were littered with shavings and debris, saturated with turpentine or other inflammable substances. Indeed, the testimony of plaintiff himself and that of his father discloses that they did not contend that the fires were accidental — for they stated that they had enemies opposed to the development of Glenn Oaks Drive and indicated that these parties were responsible for the conflagrations.
 

 Since we are in agreement with the judges that the setting of the fire was deliberate, the question next arises as to whether the insurance company has established that plaintiff, either singly or1 in conspiracy with his father-and others, was the perpetrator of the deed.
 

 In support of its contention, defendant proved that plaintiff was in financial straits; that he owed many debts and that a number of them were due for labor and materials furnished in the construction work of the house. In this connection, it was shown that various building and material supply houses had filed liens against the property in sums totalling in excess of $2000 and had reduced their claims to judgment.
 

 Plaintiff was cross-examined, expertly ■and in detail, concerning his business transactions and whereabouts on and near the dates of the fires. The substance of his testimony is that he had employed two colored men (who were not produced) to remove the debris from his house and haul it away in his truck; that the truck stalled, by reason of a weak battery, after it had been parked in the rear of the house and that, therefore, it had to be left in the position in which it was found when it caught afire. He says that he knows nothing of the can containing turpentine, which was found in the truck; that, insofar as the condition of the house was concerned, he had been mixing paints therein and that, although the rear rooms were not entirely cleared of debris, there was nothing about the condition of the property, when he was last there, to cause him to believe that a fire hazard existed. He further states that, at the time of the fir.e on the truck, he and his wife and another couple (none of them was produced) were celebrating his birthday at the Past Time Lounge; that he did not learn of the fire on the truck until Sunday afternoon, August 14th, when he went out to his house; that it was on that occasion he was informed that his father’s house had burned; that, when his house was destroyed on the following, Tuesday, he was in New Orleans and that he did not learn of his loss until the following day, when he returned to his job in Baton Rouge.
 

 Considering that plaintiff was in dire financial circumstances and that he alone, according to the evidence, would benefit by the fire, there can be no doubt that defend
 
 *642
 
 ant has established that he had a motive for destroying the property. And motive, plus the incendiary origin of the fire, would, in the absence of believable rebuttal evidence, be sufficient to sustain the affirmative defense pleaded by the insurer. See Picoraro v. Insurance Co. and other authorities cited above. However, the inference resulting from this circumstantial proof must be weighed in connection with plaintiff’s denials of wrongdoing.
 

 The district judge was of the opinion that the evidence did not preponderately establish the existence of a motive in plaintiff to destroy his property by fire or that he burned or caused it to be burned. He further opined that, after a consideration of all of the proof “ * * * it is not unreasonable to presume that some other person might have been responsible for the fires”.
 

 We cannot agree with the judge that the evidence does not establish the existence of a motive in plaintiff to set fire to his property, forasmuch, as shown above, he stood to gain if he could have collected the insurance.
 

 Nor are we in accord with the judge’s view that it is not unreasonable to presume that someone other than plaintiff is responsible for the fires. On the contrary, an analysis of plaintiff’s testimony has not left us with a favorable impression of his credibility. Throughout his entire examination he was evasive of facts and events and, when counsel for defendant sought to elicit information respecting matters about which he should have been able to readily respond, he would invariably reply that he did not remember.
 

 It would serve no useful purpose to set down in detail the many vagaries and suppressions in plaintiff’s testimony. A few of them will do. To begin with, he filed a proof of loss with the insurer in the sum of $7578.43. This proof is based entirely on estimates of his father and himself, unsupported by vouchers or book entries, despite the fact that he was engaged in the contracting business. When asked on cross-examination for a breakdown on an item of $1800 for carpentry work contained in the proof, he first stated that he could not reply definitely because he .had not “ * * * looked it up in my records lately * * * But, when request was made for him to produce his records, he said that he did not have them as some boys had broken into his place of business and stolen them. Even the unsupported valuations contained in the proof of loss were inflated. But this was discovered only after close questioning, the admitted errors aggregating the sum of $779.85.
 

 Moreover, his testimony concerning the fires and his actions at the time, is not persuasive. When he arrived at the subdivision on the afternoon of the day on which his father’s house had been destroyed, he exclaimed to the neighbors “What are they trying to do, burn us out” indicating, of course, that he and his father
 
 *644
 
 had enemies who were responsible for the fires. At the time he made this statement, he was evidently aware that his own house was littered with shavings and debris as well as the truck, which had already caught fire, yet nothing was done by him to correct the hazard which then existed. If he believed that enemies were seeking to harm him and his father because, as expressed by his father, they were opposed to the subdivision development, it seems only reasonable that plaintiff would have notified the police or taken steps to protect his property from destruction. But no complaint was made; nothing was done.
 

 An examination of the evidence as a whole convinces us that the insurer has established its defense to plaintiff’s demand by a preponderance of the evidence. •
 

 The judgment appealed from is therefore reversed and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff’s suit at his costs.
 

 [1]
 

 . As the house was under construction, the policy contained an endorsement known as “Builders’ Bisk- — Actual Completed Value Form” under which the' insurer is liable for not more than the actual loss or damage by fire.
 

 [2]
 

 . Plaintiff’s counsel objected to Harrelson’s evidence on the ground that be made an unlawful entry into plaintiff’s bouse. There is no merit in the objection. See State v. Mastricovo, La.,
 
 59
 
 So.2d 403 and authorities there cited.