GUIDRY, Judge.
This suit involves an affirmative defense of arson to a claim under a fire insurance policy. The policy in question was issued by State Farm Fire and Casualty Company (hereafter State Farm) to Mr. and Mrs. Lonzo Lanier, covering their residence at 905 11th Street, Lake Charles, Louisiana.
The property destroyed by fire was acquired by Mr. and Mrs. Lonzo Lanier from Jeanette Litteral Theriot and her children on March 2, 1978. Mrs. Theriot and her children were holders of a promissory note executed by the Laniers to secure payment of the credit portion of the purchase price. The note was secured by a vendor’s lien and mortgage on the above mentioned property. The Laniers were late on their May, 1980 payment. On May 6, 1980 Mrs. Theriot made a written demand for the entire balance due on the note. On May 27,1980, the Lanier home was damaged by fire. On May 28, 1980, Mrs. Theriot and her children foreclosed on their mortgage and then filed this suit against the Laniers to recover the deficiency. The Laniers filed a third party demand against State Farm seeking recovery under their policy of insurance and penalties and attorney’s fees for the insurer’s alleged arbitrary failure to timely pay the claim. State Farm answered alleging arson as a defense. Pico Finance Company of Lake Charles, Inc. (hereafter Pico) intervened seeking judgment against the Lani-ers for the balance due on a note which it held. This note was secured by a second *352 mortgage on the property and Pico sought to recover from the insurance proceeds by preference the amount owed it. Prior to the taking of evidence, the Laniers stipulated judgment in favor of Mrs. Theriot and her children. On January 25,1982, the trial court rendered judgment in favor of the Theriots and Pico against the Laniers and dismissed the Laniers’ third party demand against State Farm. The Laniers appealed the judgment of the trial court rejecting their third party demand against State Farm.
The only issue presented on appeal is did the trial judge err in his factual determination that the defendant proved its defense of arson; and, if so, are the Laniers entitled to recover penalties and attorney’s fees from State Farm for its arbitrary failure to timely pay their claim.
The trial judge based his conclusion of arson on the following factual findings recited in his written reasons for judgment:

“There were two points of origin of the fire. One point of origin was the small room in which the water heater was located, and the other point of origin was in the kitchen, the room adjacent to the water heater closet, and more specifically, in the kitchen cabinet above the second shelf in the cabinet immediately under the stove. All experts agreed, and logic dictates, that two or more points of origin of a fire indicate the fire was intentionally set. This conclusion of two points of origin in supported by the evidence a) that a hole had been punched in the gas tubing under the stove; b) the burn pattern; and c) there was no communication between the two points of origin.

The conclusion that the fire was of incendiary origin is further supported by the evidence that it was a fast fire, indicating the use of an accelerant in the water heater closet. The fire burned vertically, with little lateral movement, also indicating a fast, accelerated fire. Additionally, there was a minimal amount of soot build-up on the windows, indicating a fast fire. Having reached the conclusion that the fire was incendiary in origin, it remains to be determined whether Lanier was responsible for the fire.

Mr. and Mrs. Lanier testified positively that both were absent at the time of the outbreak of the fire. They both testified that they left the house simultaneously in separate cars at approximately 8:00 A.M. the morning of the fire. The house is located on 11th Street, which runs east and west. They testified they proceeded in a westerly direction on 11th Street to Common Street, and then to a warehouse. Each denied returning to the home until later that afternoon, after the occurrence of the fire.

The testimony of Lanier in this regard is refuted by Morris Hickox. Hickox lives in the second house to the east of the Lanier home, approximately 75 yards away. On that morning, he was sitting in his back yard, with a clear view of Lanier’s house and driveway. He testified that at approximately 9:00 A.M., La-nier came from the rear of his house onto the driveway and got in his truck. He backed the truck out of the driveway and went east on 11th Street, not west, as Lanier had testified, passing in front of the Hickox home. As Lanier passed in front of Hickox’s house, Hickox saw smoke coming from the vent on top of the Lanier home. He told his wife to call the fire department. The fire department’s records show that she reported the fire at 9:06 A.M.
The court accepts as both truthful and accurate the testimony of Hickox. The testimony of Lanier cannot be reconciled with that of Hickox. Either Lanier did not leave the house with his wife but remained there after she left until 9:00, or if he did leave with her earlier, he returned later to the house. Lanier was present at the house at the outbreak of the fire. That fact, in and of itself, may not under other circumstances be conclusive evidence that he set the fire. But his denial of his presence and his recitation of a completely different set of facts than those given by Hickox, coupled with the *353 fact that the fire was of incendiary origin, leads to the inescapable conclusion that he set the fire. He and no one else had the opportunity to set the fire. He had a financial motive in doing so, although it would appear from the evidence that he exercised poor judgment in choosing this means of relieving the financial pressure. The insurer has met its burden of producing evidence so convincing that it will sustain no other reasonable hypothesis but that plaintiff was responsible for the fire.”
Findings of fact by the trial judge, particularly those involving credibility of witnesses, will not be disturbed on appeal unless clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir.1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975). The standard of proof in cases involving an affirmative defense of arson was enunciated in Rist v. Commercial Union Ins. Co., 376 So.2d 113 (La.1979):
“By raising the affirmative defense of arson, the insurer has the burden of establishing, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. An insurer need not prove its case beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (1952). In addition, we stated in Sumrall:
Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.... Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy.” [cases omitted]
See also Bridges v. Reliance Ins. Co., 410 So.2d 1243 (La.App. 3rd Cir.1982).
Mr. Lanier contends that the trial judge erred in concluding that the fire was of incendiary origin. All of the experts who testified at trial agreed that more than one point of origin of a fire indicates that the fire was intentionally set. State Farm’s experts, Mr. Zwick, Mr. Smith and Chief Peet were of the definite opinion that there were two points of origin in this fire. One point of origin was located in the hot water heater closet; the other was located on the top shelf of a cabinet beneath the range top of the stove. These two areas shared a common wall and there was a gas pipe which traveled from the hot water heater through the wall to the bottom shelf of the cabinet and then into the upper shelf of the cabinet beneath the stove. The physical evidence indicates that there was no communication between the fires in the two areas. There was no burning in the interior of the wall between the two rooms.
Mr. Reynold, Mr. Lanier’s expert, was of the opinion that it was possible for heat caused by the fire on the water heater side to travel by way of convection or connection through the gas pipe and start a blaze in the top cabinet under the stove. This possibility is unsupported by the particular facts in this case. The paper on the pipe in the bottom shelf of the cabinet, which was closer to the water heater, was undamaged, indicating that the pipe in the top shelf of the cabinet, which was further away from the water heater, could not have been hot enough to ignite even paper in the top shelf of the cabinet. Accordingly, we conclude that the trial court’s finding that there was more than one point of origin of the fire, which is one factor indicating incendiary origin, is fully supported by the evidence.
There is also evidence which excludes all possible accidental causes of fire in each of the areas. The only normal heat source in the hot water heater cabinet was the water heater itself. Based on a lack of damage to the water heater controls and the burn pattern, which was lateral across the floor in that room, Mr. Zwick and Mr. Smith eliminated the water heater as a source of the fire. Both were of the opinion that the *354 burn pattern in this area indicated the use of an accelerant or flammable liquid at floor level.
In the kitchen area, on the top shelf of the cabinet under the stove, Mr. Smith and Chief Peet found a portion of the gas pipe which had several holes in it. At the scene of the fire, the officials felt one of the holes was caused by a tool and sought an examination of the pipe. Officer Byrd, who qualified as an expert in tool mark analysis, was of the definite opinion that the hole in question was produced before or at least during the fire. Although he was unable to make a positive identification, he was of the opinion that the object which made the hole was similar in size and shape to the end of a screwdriver taken from the Lanier home by Mr. Smith. Mr. Smith, Mr. Zwick and Chief Peet were all of the opinion that the fire in the kitchen was set by igniting gas from the punctured gas line.
Furthermore, all experts agreed that there was more vertical movement than lateral movement of the fire and that there was a relatively small amount of soot on the windows evidencing a fast fire. Both Mr. Zwick and Mr. Smith indicated that the fire in the Lanier home was a fast or accelerated fire which is characteristic of an intentionally set fire as distinguished from an accidental fire which is usually slow.
All of these circumstances support the conclusion that the fire was of incendiary origin and exclude other reasonable hypotheses of an accidental origin. We therefore conclude that the trial judge was not clearly wrong in finding as a fact that the fire was intentionally set.
The Laniers also contend that the trial court erred in determining that Mr. Lanier was responsible for the fire. As the trial judge noted, the testimony of Mr. Lanier is in direct conflict and cannot be reconciled with the testimony of Mr. Hickox, which places Mr. Lanier at the house at the time the fire started. The trial judge accepted the testimony of Mr. Hickox as both truthful and accurate. He admits that Mr. Lanier’s presence at his house at the outbreak of the fire, in and of itself, is not conclusive evidence that he set the fire. He, nonetheless, ultimately concluded that Mr. Lanier was responsible for the fire, based on the following findings: that Mr. Lanier was the only person with the opportunity to set the fire; that he was experiencing financial difficulty at the time of the fire; that he denied his presence at his house at the outbreak of the fire; and, that he recited a completely different set of facts than those given by Mr. Hickox.
These are facts particularly involving the credibility of the witnesses. The trial judge heard and saw the witnesses, observed their demeanor and weighed their credibility. Mr. Hickox’s testimony was detailed, consistent and corroborated by circumstantial evidence. His testimony, which the trial judge accepted as true, was that he observed Mr. Lanier leaving the house moments before smoke was observed venting from the home. Having determined that the fire was intentionally set, these facts lead to the inescapable conclusion that Mr. Lanier was the only person with the opportunity to set the fire. We find no manifest error in the trial judge’s conclusion. The evidence that the fire was of incendiary origin and that Mr. Lanier started the fire is overwhelming and excludes every other reasonable hypothesis as to its origin.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed against third party plaintiffs, Lonzo Hill Lanier and Margaret Richey Lanier.
AFFIRMED.