616 So.2d 231 (1993)
DEL-REMY CORPORATION and Fidelity Homestead Association, Appellants/Plaintiffs,
v.
LAFAYETTE INSURANCE COMPANY, Appellee/Defendant.
No. 92-CA-1020.
Court of Appeal of Louisiana, Fifth Circuit.
March 17, 1993.
John L. Diassellises, III, Laplace, for appellants/plaintiffs Del-Remy Corp. and Fidelity Homestead Ass'n.
David E. Walle and John E. McAuliffe, Jr., New Orleans, for appellee/defendant Lafayette Ins. Co.
Before BOWES, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiffs, Del-Remy Corporation (Del-Remy) and Fidelity Homestead Association (Fidelity), appeal from a judgment in favor of defendant, Lafayette Insurance Company (Lafayette), dismissing plaintiffs' suit for recovery of fire insurance proceeds. For the reasons which follow, we affirm.
On February 8, 1989, Remy Gross, II (Gross), the sole officer and director of *232 Del-Remy, obtained a policy of fire insurance from Lafayette, providing for $180,000 coverage on a house owned by Del-Remy. Less than two months later, on March 29, 1989, the house was heavily damaged by fire. There is no dispute that the fire was intentionally set. Del-Remy made a claim for the policy proceeds and, on May 25, 1989, executed a "Notarial Act of Assignment of Proceeds From Casualty Insurance Policy" in favor of Fidelity, the mortgage holder of the property. Fidelity was not named in the insurance policy. Del-Remy's claim was not paid and Del-Remy and Fidelity filed suit against Lafayette.
Lafayette asserted the defense of arson. The case was tried before a jury on February 18 through 21, 1992. The Jury Interrogatories, dated February 21, 1992, concluded that the fire had been intentionally set or caused to be set by Gross or someone acting in Del-Remy's behalf. Judgment was rendered on May 26, 1992, pursuant to the jury verdict, dismissing plaintiffs' suit. This appeal by plaintiffs followed.
Plaintiffs assert two assignments of error. First, they argue that the trial court erred in denying Fidelity's claim against Lafayette, whether Lafayette proved its arson defense or not. More particularly, they argue that the defense of arson by the insurer does not apply to Fidelity because Fidelity is the mortgagee and has a separate and distinct right of recovery against the insurer, notwithstanding the possible arson by the insured. In support of this argument, plaintiffs rely on La.R.S. 22:1220 and La.R.S. 22:658.
La.R.S. 22:1220, concerning an insurer's duty to act in good faith, was added by Act No. 308 of 1990, effective July 6, 1990, well after the loss occurred, the claim made and the suit filed in this case. It is penal in nature and, as such, has no retroactive application. Furthermore, La.R.S. 22:1220 addresses the duty an insurer owes to its insured. As discussed in more detail below, Fidelity was not an insured under the policy between Del-Remy and Lafayette. Accordingly, the provisions of this statute are of no help to plaintiffs herein.
La.R.S. 22:658, in effect at the time of the fire loss herein, relates to the payment and adjustment of claims and provides, in pertinent part:
A. All insurers issuing any type of contract, other than those specified R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
B. (1) Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the total amount of the loss, payable to the insured, or to any of said employees, to together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
(2) The sixty-day period for payment of losses resulting from fire and penalty provisions for non-payment within the sixty-day period shall not apply where the loss from fire was arson related and the state fire marshal or other state or local investigative bodies have the loss under active arson investigation. The provisions relative to time of payment and penalties shall commence to run upon certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings.
(3) The provisions relative to suspension of payment due to arson shall not apply to a bona fide lender which holds a valid recorded mortgage on the property in question. (Emphasis provided).
*233 Plaintiffs argue that, under these provisions, Fidelity, the mortgagee, has a right to be paid the insurance proceeds whether the insured is suspected of arson or not. The delay in such a payment will also result in penalties and attorney's fees. We disagree.
While the statutory provision does address the right of a mortgagee to be paid, notwithstanding an arson investigation, our Supreme Court, in May v. Market Insurance Company, 387 So.2d 1081 (La.1980), held that La.R.S. 22:658 is only applicable where the mortgagee is an "insured" within the meaning of the statute. This is not the case here.
Fidelity, the mortgagee, was not named in the insurance agreement. The section designating the mortgagee was left blank. Furthermore, the insurance agreement herein does not contain the standard mortgagee clause, which, under May, would make the mortgagee an "insured" under La.R.S. 22:658.[1] On the contrary, the mortgage clause in this insurance agreement only applies "[i]f a mortgagee is named in this policy...." Fidelity's right to the insurance proceeds arises only under the "Assignment of Proceeds" executed after the loss occurred. This is admitted in the petition in paragraph 7 which provides:
The property damaged by fire was mortgaged to Fidelity Homestead Association, and although there was no provision in said insurance contract for payment to the mortgagee, petitioner Del-Remy Corporation did execute a Notarial Act of Assignment of Proceeds of Casualty Insurance Company in favor of petitioner, Fidelity Homestead Association, to secure the payment of said mortgage. Such assignment provides that any check issued to pay the proceeds due pursuant to said insurance policy is made payable to both petitioners.
As an assignee, who's rights were acquired after the loss, Fidelity acquires only those rights possessed by its assignor at the time of the assignment. Fidelity is in the shoes of Del-Remy. The cases relied on by Fidelity all involved mortgagees that were named as loss-payees in the insurance policies. Accordingly, we are not persuaded by plaintiffs' contention that Fidelity should be paid the insurance proceeds notwithstanding the arson defense.
Plaintiffs argue, in their second assignment of error, that the arson defense was not adequately proven.
The law in civil arson cases in Louisiana was set forth by the Louisiana Supreme Court in Rist v. Commercial Union Insurance Company, 376 So.2d 113 (La.1979) as follows:
By raising the affirmative defense of arson, the insurer has the burden of establishing, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. An insurer need not prove its case beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (La.1952). In addition, we stated in Sumrall:

Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.... Accordingly, the questions presented in matters of this sort are answered by the particular facts of the controversy. [cases omitted]
Therefore, the issue presented for our determination is whether, under the facts presented in this case, Lafayette established, by a clear preponderance of the *234 evidence, that the fire in question was of incendiary origin and that Del-Remy, or someone on its behalf, was responsible for it. The case was tried by a jury, which determined that Lafayette had met its burden of proof. The jury was presented with an interrogatory that asked:
Has Lafayette Insurance Company established by a preponderance of the evidence the fire in question was intentionally set or cause to be set by Remy Gross II or some other person acting on his behalf or on behalf of Del-Remy Corporation?
The jury answered "Yes".
Whether the arson defense was adequately proven by the defendant is a factual determination which was made by the jury adversely to plaintiffs.
It is well settled that the standard for appellate review of factual determinations made by the finder of fact is that such determinations are not to be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). In further explaining this standard, the Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989) enunciated the following general principles:
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, id., at 844-845.
It was clearly established that the fire was intentionally set. That finding is not contested by plaintiffs. The only question is whether the evidence establishes that Del-Remy, or someone on its behalf, started the fire.
Plaintiffs argue that the evidence does not adequately support a finding that Del-Remy, or someone on its behalf, started the fire. Gross said that he was at home in bed at the time of the fire. This was corroborated by two friends. He argues that he had no motive because all the funds recovered under the insurance policy were to be paid to Fidelity as the mortgagee. He denies that the property was overinsured through the testimony of Mr. Hogan and Mr. Dixon. Gross contends that he was contacted by Fidelity in November or December of 1988 about obtaining insurance for the property because the mortgage required it. Gross testified that the substances used to start the fire were all located on the premises and available to anyone to start the fire.
On the other hand, Lafayette presented evidence that the fire was investigated by Robert Preveau, of the State Fire Marshal's Office, and Randall Bruff, an investigator employed by INS Investigations, Inc. Both men were recognized by the court as experts in the field of the determination of the cause and origin of fires. They testified that paper towel "trailers" were spread about the attic in the wing of the house that did not burn. Portions of the trailer material were analyzed and found to contain accelerant.[2] They testified that trailers are never found in accidental fires. The investigators also found deep, heavy charring of the wood floor on the second floor of the house, indicative that a petroleum product was poured onto the floor and ignited. Preveau opined that the manner in which the fire was set eliminated the *235 likelihood that someone started this fire out of vengeance or spite. He stated that the fire was not set in the fashion normally used by those set by a vagrant, a vandal or someone bent on revenge. He also thought that it was likely that whoever set the fire was familiar with the house since the arsonist knew that the small opening in the upstairs hallway led into the attic where the trailers were found. The experts found no accidental cause of the fire. When the firemen arrived to fight the fire, they found the building locked. They had to force entry to gain access to the interior of the building to fight the fire. Martin testified that he checked the entire building and found that every point of forced entry was made by a firefighter. At the time of the fire, the only keys to the premises were locked in Gross' office. Thus, Gross was the only one with legal access to the premises.
Lafayette also introduced evidence of motive for the arson. The building was owned by Del-Remy. Gross was the sole officer of Del-Remy and he alone managed its affairs. The building had been his father's residence prior to his death in January of 1988. It was empty at the time of the fire and had been empty since his father's death. The property, along with another property, had been mortgaged to Fidelity in 1985 for $700,000. In June of 1988, Gross had listed the property, along with the nine acre tract of land it was built on, for sale for $600,000. The asking price was reduced to $540,000 in September of 1988. Gross had only one verbal offer for $350,000, which was not accepted. No written offers had been made. Sometime in December of 1988 or January of 1989, Gross contacted an insurance agent, Walter Barnes, about insuring the property. A binder was issued in January of 1988 for $225,000. Eventually Barnes obtained casualty insurance for the property from Lafayette for $180,000, effective February 8, 1989. Fidelity was not named as mortgagee on the policy.
In 1984 the property had been appraised at Gross' request and the nine acres of land alone appraised for $580,000. The house was assigned a value of only $12,000 at that time, but that was not the focus of the appraisal. Ross Shuffield, an appraiser, was accepted as an expert at trial. He appraised the property shortly after the fire and set the land value at about $315,000 and the building value at about $25,000. He opined that the best use of the property, at the time of the fire, would have been to subdivide the property without the house.
Both Gross and Del-Remy were in a dire financial condition at the time of the fire. Gross admitted that he had been insolvent for nearly three years prior to the fire. A number of lawsuits had been filed against Gross and Del-Remy and judgments had been rendered against them in some cases. Thus, Lafayette argues that Gross had motive and opportunity to set the fire and that it met its burden of proof.
The trier of fact in this case, the jury, agreed with Lafayette that it had "established by a preponderance of the evidence the fire in question was intentionally set or caused to be set by Remy Gross II or some other person acting on his behalf or on behalf of Del Remy Corporation." Considering the whole record, we cannot say that the jury was clearly wrong or manifestly erroneous in making this determination. After considering the record before us, we find that it sufficiently supports the jury finding that Lafayette established, by a preponderance of the evidence, that the fire was set by Del-Remy or someone on its behalf.
Accordingly, for the reasons stated above, we affirm the judgment of the district court dismissing plaintiffs' suit against Lafayette. The costs of this appeal are to be paid by plaintiffs.
AFFIRMED.
NOTES
[1] In May the Court noted that mortgage clauses in insurance agreements generally fall into two forms, the open or simple mortgage clause and the standard or union mortgage clause. The simple mortgage clause merely provides in effect that the proceeds of the policy shall be paid first to the mortgagee as his interest may appear. The standard or union mortgage clause is somewhat more specific in that it also provides that the mortgagee shall be protected against loss from any act or neglect of the mortgagor or owner, so that it shall not defeat the insurance so far as the interest of the mortgagee is concerned.
[2] All four of the samples tested contained turpentine and one sample contained both turpentine and gasoline.