618 So.2d 1059 (1993)
Clifton E. CHISHOLM and Shirley Ann Chisholm
v.
STATE FARM FIRE & CASUALTY CO. and Tony Chisholm.
No. 92 CA 0280.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
*1060 Carey Jones, Denham Springs, for plaintiff/appellant.
Michael Clegg, Baton Rouge, for defendant/appellee.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
SHORTESS, Judge.
Clifton E. Chisholm (Chisholm) and Shirley Ann Chisholm (plaintiffs, collectively) brought this suit against State Farm Fire & Casualty Company (defendant) to recover the policy limits of a homeowners policy, penalties, and attorney fees after their house was totally destroyed by fire on July 18, 1987.[1] Defendant asserted the defense of arson and reconvened against plaintiffs for the sum of $39,584.74 paid to and on behalf of plaintiffs under the policy. During the bench trial, the plaintiffs abandoned their claim for penalties and attorney fees. The parties stipulated the fire was of incendiary origin. The court ruled in favor of defendant on both the main and reconventional demands. Plaintiffs appeal this judgment.
In written reasons the trial court fully and accurately set forth the facts. We adopt the following statement of facts by the trial court as our own.
FACTS
Evidence adduced at trial show[s] that plaintiff, Clifton Chisholm, and his sons had been engaged in a family plumbing business for many years. Shirley Chisholm testified that the business had been good through the early part of the 1980's. Plaintiffs' house was constructed in 1974.
During the middle 1980's, plaintiff's business, like so many others in South Louisiana, began to suffer in the general economic downturn. Plaintiffs admitted this fact and a Certified Public Accountant, who testified on behalf of defendant, showed that the business had gone from a net profit of $25,646.00 in 1984 to a net profit of $18,759.00 in 1985, a net loss of $13,225.00 in 1986, and a net loss of $34,435.00 in 1987.

*1061 As the business declined, the Chisholms ultimately elected to close down their business in Louisiana in the latter part of 1985 and early 1986, and the family moved temporarily to Tennessee, seeking to improve their finances. They rented accom[m]odations in Tennessee, and would return to Louisiana for visits and to maintain their property once or twice a month.
The family's bleak financial circumstances were further underscored through introduction of a number of lawsuits, judgments, and liens which had been filed against [plaintiffs] commencing in the middle of 1986. Judgments had been rendered for sums exceeding $19,000.00, tax liens totaling some $1,600.00 had been filed, and lawsuits were pending on suits on notes and accounts exceeding $11,000.00. Mrs. Chisholm testified that plaintiffs had consulted with a bankruptcy attorney in early 1986, but had not taken bankruptcy, hoping to pay local suppliers through working out of state.
While plaintiffs testified that they always intended to return to Louisiana and considered it as their home, the evidence indicated that their house was listed for sale on April 18, 1986, and remained listed through the time it was destroyed by fire. One offer to purchase in the amount of $110,000.00 had been accepted, but the sale did not close due to the prospective buyer's inability to obtain financing. The agent who had listed the property had placed a value of $86,920.00 on the buildings which were destroyed through the fire.
In addition to the house and utility building, there was a larger, detached storage building on plaintiff's property. Plaintiffs apparently used this as a shop and storage facility for plumbing parts and supplies. This building was not destroyed in the fire and was subsequently modified by plaintiffs to include an apartment in which they presently reside.
On the night before the fire occurred, Clifton Chisholm and his two sons returned to Louisiana from Tennessee. They testified that their purpose was to mow the grass and clean up their property. They testified that they arrived in the early hours of Saturday morning, and went to sleep. Later in the morning, they got up and began mowing and cleaning up the property.
Some time late in the morning, Clifton Chisholm testified that a man came up on the property and took some pictures of the house. When questioned, this man stated that he was from State Farm and was checking on the property.
Various friends and neighbors had come by during the day to greet the Chisholms. After they had eaten lunch and completed mowing and cleaning the property, plaintiff and his two sons testified that they had gone into the storage building and were engaged in getting plumbing fixtures and supplies which they felt they could use in their work in Tennessee, and loading them on their trucks. They testified that they had been engaged in this for approximately two hours without going back into the house, when a neighbor ran up from across the street and advised them that the house was on fire. By the time they got out of the storage shed to observe this, the house was consumed in flames and could not be saved.
The testimony of plaintiff and his two sons further indicated that the storage facility and shop was located approximately 120 feet from the rear of the house. There was a door at the side rear of the house, closest to this shop, which was the only door plaintiffs had used since they arrived from Tennessee. The front doors of the house remained locked, to the best of plaintiffs' knowledge.
Chris Salsbury, an expert in the cause and origin of fires, testified on behalf of defendants. Mr. Salsbury produced a diagram showing a trail of [accelerants] which his investigation showed had been used to start the fire. He stated that the [accelerant] used in this case was gasoline and that he estimated one or two gallons had been used. The diagram showed a trail of gasoline which was *1062 spread through every room in the house. He estimated that it would probably have taken five to ten minutes to set up the fire.
The fire occurred during daylight hours in the late afternoon. Plaintiffs and their witnesses testified that they knew of no enemies they had who might have had cause to set the fire, nor had they received any threats, etc.

LAW
Arson is an affirmative defense against a claim for fire insurance proceeds. The insurer has the burden of establishing, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. Since arson is rarely committed in the presence of eyewitnesses, the insurer may prove its case by circumstantial evidence. To do so, it does not have to prove its case beyond a reasonable doubt; it must simply exclude every reasonable hypothesis but that the plaintiff is responsible for the fire. Rist v. Commercial Union Ins. Co., 376 So.2d 113 (La.1979); Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (La.1952). Proof of motive plus establishment of the incendiary origin of the fire, in the absence of credible rebuttal evidence, is sufficient to sustain the affirmative defense of arson. Sumrall, 60 So.2d at 70.
In this case, plaintiffs stipulated to the incendiary origin of the fire. Defendant had to prove only that Chisholm, either singly or in conspiracy with his sons, was the perpetrator of the deed. Defendant proved Chisholm had both motive and opportunity. No reasonable hypothesis was offered at trial that anyone else had a motive to burn plaintiffs' house. On appeal, plaintiffs contend their sons Terry and Tony could have set the fire. However, Chisholm testified at trial that he never saw either son go inside the house after lunch, and that he was the last person in the house before the fire. Furthermore, there is not a scintilla of evidence that either son had a motive to set his parents' house afire.
The trial court obviously did not believe Chisholm when he said he did not set the fire. In light of the incredible nature of Chisholm's testimony that he was the last person in the house before it burned and yet did not smell one to two gallons of gasoline that had been poured throughout the house and that he worked in his shop 120 feet from the house with three open doors and yet did not smell smoke or hear the fire, even though fire was "coming out everywheres," until a neighbor drove to his house and told him of the fire, we find no manifest error in the trial court's findings of fact. We thus affirm the judgment of the trial court in favor of State Farm Fire and Casualty Company at plaintiffs' costs.
AFFIRMED.
NOTES
[1] Plaintiffs also sued their son, Tony Chisholm, alleging he intentionally or negligently spilled a flammable liquid in the home and failed to take the necessary precautions to prevent a fire. He failed to answer, and a preliminary default was entered against him. No evidence was introduced at trial to support these allegations, and he was not named in the judgment.