h HARRISON, Judge Pro Tempore.
The plaintiffs, John and Diane Evans, appeal a judgment rejecting their claim for fire insurance proceeds against State Farm General Insurance Company (“State Farm”) on the basis of arson. The district court found that State Farm proved, by a preponderance of the evidence, that Mr. Evans was a principal in the arson. For the reasons expressed, we affirm.

Factual background

The structure at issue was a small camp house near Lake Bistineau in Doyline, Louisiana, which the Evanses bought in August 1994 for $19,000. Someone was building a new and larger Jim Walter camp house next door. Thinking this would better suit their needs, the Evanses bought the new one in October 1994 by paying $1,000 to the owner and assuming her monthly note of $180. Neither of these camp houses was the Evanses’ principal residence; they were living in a mobile home north of Shreveport, but after October 1994 they were paying notes and insurance on two camp houses.
Although the new camp house was not finished inside, the Evanses moved their belongings to it and attempted to rent the old one. They had two very unsatisfactory tenants, the first of whom damaged the place and the second left without paying several months’ rent. By August 1995, the old camp house was vacant again, and John Evans (hereinafter, “Evans”) testified that he began moving furniture back into it.
Earlier, in June 1995, the Evanses filed for Chapter 13 bankruptcy. They denied that they were in financial straits, but they had some $32,000 in unsecured credit card debt (trial testimony suggested that much of this waspincurred at a casino in Bossier City). They did not list the old camp house as an asset in their bankruptcy filings. However, they entered a reorganization plan whereby they paid the principal on all but two of their unsecured debts.
The Evanses’ neighbor, Danny Lowrey, had lived next door to their old camp house for over 20 years. The record depicts him in a rather unfavorable light, with an old criminal record and a spotty work history of fixing TVs and trucks. On occasion, Evans had asked him to watch his property while he was working offshore; he had a key to the old camp house. During one of their conversations, according to Lowrey, Evans offered him money to burn down the old camp house.
*1145 Lowrey testified that one day while they were standing in their adjacent yards and talking, Evans remarked to him, “It sure would be nice if it [the old camp house] wasn’t there when we got back.” Lowrey thought Evans was joking, but he testified that Evans offered him $1,000 to torch the structure. Lowrey added, “At the time, $1,000 looked pretty d* * * good.”
Lowrey testified that he performed the arson with the help of a friend, Tommy Caskey, whose truck he had just repaired. Lowrey testified that he drove Caskey’s truck to the old camp house; Caskey sat in the cab while Lowrey fetched some diesel fuel and rags out of the bed of the truck, used Evans’s key to enter the front door, and started a small fire in the northwest bedroom. He then got back in the truck and drove off with Caskey. The old camp house was destroyed by the fire on December 8,1995.
|sLowrey further testified that when Evans returned from his job offshore, he gave him 10 hundred-dollar bills. The Fire Marshal verified that Lowrey used two of these to make a down payment on a car about 14 days later.
Evans resolutely denied that he ever made the offer or paid any money to Low-rey. However, as a result of the Fire Marshal’s investigation, both men were charged with arson in Webster Parish. At the time of trial in June 2000, neither man had been tried.
The third man in the transaction, Cas-key, was too ill to testify at trial. In a statement to the Fire Marshal, however, he said he was standing nearby when Evans approached Lowrey about committing arson; he overheard the proposition. He was fairly adamant that at the time, Evans was wearing cutoff jeans and that the amount offered was $2,500. Caskey also said he saw Lowrey unloading some furniture from the old camp house prior to the fire, but he did not report this to the police.
Lowrey did not recall that Caskey was present when Evans made his criminal proposition. He admitted, however, that Caskey might well have overheard it because voices carry well over the water. Lowrey never paid Caskey any of the arson proceeds. Lowrey also denied stealing any furniture from the old camp house.
For his part, Evans denied that he even knew Caskey, or that the man was standing around on any occasion while he (Evans) was talking to Lowrey. Evans also insisted (and called two character witnesses to verify) that he never wore blue jean shorts, or short pants of any kind. As noted, | ¿Evans steadfastly denied any involvement in the fire.
The State Fire Marshal found that the fire originated in the northwest bedroom and that an accelerant such as fuel oil had been used. He found no evidence of forced entry to any door or window. He also found that the furnishings in the structure were “sparse,” consisting of two old TVs, two sofas, and a mattress on a floor in the bedroom.
The Evanses filed a claim for the full value of the policy, $33,025, including content coverage of $11,683. State Farm denied it on grounds that Evans committed arson. The Evanses filed this suit. Prior to trial in June 2000, the parties stipulated that arson had occurred. The only issue was whether Evans was involved in the crime.
At trial, fact witnesses gave the testimony summarized above. The Deputy State Fire Marshal, Jim Alexander, stated that Lowrey and Caskey had no reason to burn the place unless they were getting paid to do so, whereas Evans had a financial gain in collecting insurance on a camp house that he no longer needed. Evans contends *1146 that both Lowrey and Caskey were disreputable persons and unworthy of belief; nevertheless, he utilized the portion of Caskey’s statement about seeing Lowrey steal furniture from the old camp house. Evans’s theory was that Lowrey started the fire to conceal his sloppy burglary.
The district court rendered written reasons for judgment in January 2002. Commenting that the case was “extremely close,” the court found that State Farm proved Evans was a principal in the arson. The court cited the following factors as determinative: (1) Lowrey’s sworn statement that he | ¡¡was paid for and burned the structure at Evans’s request; (2) the Ev-anses’ financial condition immediately before the fire, establishing a motive; (3) the numerous inconsistencies in their various valuations of the property; and (4) the pending bankruptcy proceedings.
The Evanses have appealed, urging by one assignment of error that the district court was plainly wrong to find that Evans was involved as a principal in the arson, and in finding that his bankruptcy filing and overall financial condition established a motive for the crime.

Applicable law

The State Farm Homeowners Policy includes the following endorsement with respect to intentional acts: “If you cause or procure a loss to property covered under this policy for the purpose of obtaining insurance benefits then this policy is void as to you.”
The burden of proof for an insurer asserting the defense of arson is stated in Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68 (1952):
Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire.
[[Image here]]
Considering that plaintiff was in dire financial circumstances and that he alone, according to the evidence, would benefit by the fire, there can be no doubt that defendant has established he had a motive for destroying the property. And motive, plus the incendiary nature of the fire, would, in the absence of believable rebuttal | (¡evidence, be sufficient to sustain the affirmative defense pleaded by the insurer.
In the more recent case of Rist v. Commercial Union Ins. Co., 376 So.2d 113 (La.1979), the court reiterated that the insurer asserting the defense of arson “need not prove its case beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense.” See also, Childs v. Zurich American Ins. Co., 476 So.2d 403 (La.App. 2 Cir.), writ denied, 479 So.2d 920 (1985), and citations therein. When circumstantial evidence is used, the facts as a whole must exclude other reasonable hypotheses with a fair amount of certainty; it need not negate all other possible causes. Christensen v. State Farm Mutual Auto. Ins. Co., 552 So.2d 1377 (La.App. 5 Cir.1989), writ denied, 558 So.2d 572 (1990).
As with all other factual findings, the district court’s findings as to the defense of arson are entitled to great weight and will not be reversed in the absence of manifest error or unless they are clearly *1147 wrong. Childs v. Zurich American Ins. Co., supra; Economy Auto Salvage Inc. v. Allstate Ins. Co., 499 So.2d 963 (La.App. 3 Cir.), writ denied, 501 So.2d 199 (1986). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the fact finder’s findings. Lasyone v. Kansas City Southern R. Co., 00-2628 (La.4/3/01), 786 So.2d 682.

Discussion: Proof of motive

The Evanses urge that the district court was plainly wrong in two respects. First they contest the finding that their bankruptcy filing and overall financial condition established a motive for the crime. They contend 17that by accepting a Chapter 13 reorganization, they agreed to pay off 100% of their unsecured debt, and successfully completed the plan. They also cite a comment by State Farm’s own investigator, Bobby Kerr, who remarked on cross examination that when the Evanses filed for bankruptcy, they were not in deep financial need. This evidence, in their view, defeats the essential element of showing that they were in “a dire financial condition” and warrants reversal. In support they cite Fontenot v. Hanover Ins. Co., 473 So.2d 145 (La.App. 3 Cir.), writ denied, 475 So.2d 1109 (1985).
Admittedly, the Evanses’ financial condition was not as catastrophic as in Summrall or Childs, supra. However, State Farm was only required to show a motive for destroying the property. The Evanses were unable to explain how they ran up so much credit card debt; they obviously felt the situation was serious enough for bankruptcy relief. They omitted the old camp house from the bankruptcy schedule of real property and listed household goods, for both camp houses and their trailer in Caddo Parish, as worth only $700. However, their fire insurance claim alleged the contents of the old camp house were worth over $17,000, and they sought full contents coverage of $11,683. From these facts, the district court could certainly find that the Evanses had a financial motive in destroying the old camp house.
Moreover, despite his isolated remark that the Evanses were not in “deep” financial need, the Deputy Fire Marshall concluded there was a financial motive for the arson. Notably, he testified that the contents of the gutted structure were “sparse.” As the amount of the claim greatly exceeded |sthe value of the contents, the district court could find a financial motive.
For these reasons, we perceive no manifest error in the finding of a motive to commit arson. We note that Fontenot v. Hanover Ins. Co., supra, cited by the Evanses, involved a de novo review of record evidence, and did not declare the jury’s verdict plainly wrong. Applying the proper standard, we find no manifest error. Childs v. Zurich American Ins. Co., supra.

Credibility issues

The Evanses next contend the district court was plainly wrong to accept the testimony of Tommy Caskey, either in its substance or to corroborate that Evans paid Lowrey to burn the old camp house. They contend that everything about Caskey’s testimony is suspect and unworthy of belief. In particular, the Fire Marshall was determined to “nail” Evans while taking no action against Cas-key, thus providing a motive for Caskey to lie. The Evanses’ hypothesis is that Lowrey committed the arson to conceal a sloppy burglary of the old camp house; they submit this is at least as reasonable as State Farm’s theory that Evans paid Lowrey to burn it. If the theories are in equipoise, they urge, they should win. Economy Auto Salvage Inc. v. Allstate Ins. Co., supra.
We have closely reviewed this conflicting evidence. Lowrey and Caskey had credi *1148 bility problems, but like the district court we cannot conceive why they would have torched their neighbors’ property unless there was a financial incentive. The theory that Lowrey committed a burglary of the old camp house does not seem reasonable; based on their bankruptcy schedules, the Evanses apparently had little movable property | flthere, and they never reported a burglary. Moreover, the only direct evidence of a burglary is the testimony of Tommy Caskey, whom the Evanses brand as completely unworthy of belief.
We are mindful of the district court’s superior position to assess the witnesses’ credibility. Lasyone v. Kansas City Southern R. Co., supra. In light of the conflicting and perhaps irreconcilable evidence, we cannot say the district court’s decision to credit Lowrey and Caskey was unreasonable. The court’s interpretation of this record was not plainly wrong.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed to the appellants, John and Diane Evans.
AFFIRMED.